C. S. NORTHROP, et al., v. S. S. COOPER, et al.

1. EXECUTION SALE OF REAL ESTATE; Notice; Time. In computing the thirty days "at least," which notice of sale of real estate taken in execution must be published, the day of the first publication is to be included and the day of sale excluded.

2. NOTICE, Valid. Such a notice of sale is not vitiated by the fact that instead of naming a specific hour as the time of sale, it stated that the property will be sold between the hours of 10 o'clock A. M. and 4 o'clock P. M.

3. EXECUTION SALE, Not Set Aside. An order of sale which omits to state the rate of interest which the judgment bears, is not thereby rendered so defective that a sale made thereunder ought to be set aside.

4. SUCH SALE, *Undisturbed.* Neither should the sale be set aside where the order omits to state whether the sale is to be made with or without appraisement, but directs that the sale be made according to law, and the sale is in fact made without appraisement as the judgment directed.

5. CONFIRMATION OF SALE, *Not Set Aside.* Where, after a decree foreclosing a mortgage, the mortgaged property is duly offered for sale, and struck off to an outside party for $100, and neither mortgagee nor mortgagor is present at the sale, and it does not appear why they were absent, or that they were misled as to time, or were unavoidably prevented from attending, or made any effort to attend, or that they even intended or desired to be present, and no want of good faith in the purchaser or the officer is shown, *held,* that a ruling of the district court confirming and refusing to set aside the sale will be sustained, although it appears that the actual value of the property was from $565 to $933.

*Error from Jefferson District Court.*

SEPTEMBER 22, 1876, *C. S. Northrop* filed his petition against James M. Cotton and Elizabeth Cotton in the district court of Jefferson county, for judgment against James M. Cotton upon certain notes, and the foreclosure of a mortgage given to secure their payment. December 8, 1876, plaintiff amended his petition, making four others defendants, and asking simply equitable relief against them. All were duly served with summons. Sarah Cotton, another defendant, was made a party on her own motion, and filed her answer. February 19, 1877, a decree was granted in said district court in said cause, rendering judgment against said James M. Cotton in favor of the plaintiff for the sum of $659.11, including attorney's fee and for costs of the action, and foreclosing the mortgage and the interest of all the defendants, ordering the sale of the mortgaged premises without appraisement after six months' stay of execution, and that the proceeds be applied to the said judgment against James M. Cotton. October 8, 1877, an order of sale was issued to the sheriff of said county, directing him to advertise and sell according to law the premises described in said decree, and charged with the payment of said judgment. The sheriff of said county published a notice of the sale of said premises, and on the day fixed in such notice offered

28 — 23 KAS.

said premises for sale, allowed the same to be bid off by *S. S. Cooper*, defendant in error herein, for the sum of $100, and made a return of his proceedings. November 15, 1877, three days after the day of sale, the said sheriff and *S. S. Cooper* applied to the court for an order confirming said sale, which order the court granted, directing taxes to be paid out of the $100 paid by said *Cooper*, and a deed to be made by the sheriff for the premises to the said *Cooper*, defendant herein. November 21, 1877, the plaintiff filed his motion to set aside the order of confirmation and the sale made by the sheriff, and at the same time certain affidavits in support of said motion; and the court set aside the order of confirmation upon said motion, but continued the same for further hearing until the February Term of said court, 1878, with leave to parties to file additional affidavits. Afterward, J. M. Cotton, the judgment debtor, filed his motion also to set aside said sheriff's sale; and prior to the hearing of the *motion continued to* the February Term, 1878, *Northrop* and J. M. Cotton filed certain affidavits in support of said motion, and the defendant *Cooper* filed certain affidavits in opposition thereto. The motion was heard at the February Term, 1878, and refused, and the sale confirmed, and the sheriff ordered to execute a deed and put the said *Cooper* in possession of said premises. J. M. Cotton has since deceased, and left surviving him Elizabeth Cotton (widow), and John M. Jones, Ella Jones, and G. W. Cotton, his heirs-at-law, who are joined as plaintiffs herein. These plaintiffs complain that the court below erred: First, in sustaining the motion of *S. S. Cooper* and the sheriff for a confirmation of said sale; second, in overruling the motions of the said *C. S. Northrop* and James M. Cotton for an order to set aside such confirmation and sale of the real estate.

*R. J. Borgholthaus*, and *D. S. Alford*, for plaintiffs in error:

1. The court erred in granting a confirmation of the sale, for the reason that notice of the sale was not published as required by law. (Gen. Stat. 1868, ch. 80, § 457.) The sheriff's

return shows, first, that the first publication of this notice of sale was made October 13, 1877, and the sale took place November 12, 1877, which allows only twenty-nine full days during which the notice was published, which would clearly be insufficient; the expression, "for at least thirty days *before* the day of sale," being equivalent to the expression, thirty *clear* days, excluding both the day of first publication and the day of sale. (18 Kas. 208, 209; *Garvin v. Jennerson*, 20 Kas. 371; 11 id. 113; 3 id. 276; 30 Md. 266.)

2. The notice of sale was also defective in that it did not give notice of the time of the sale, within the meaning and spirit of the statute. The notice of sale reads as follows: "On Monday, the twelfth day of November, A. D. 1877, between the hours of 10 o'clock A. M. and 4 o'clock P. M. of that day," etc. The object of the statute is manifestly to provide that all parties interested shall have proper notice of the time when the sale is to take place. The hour of the sale should have been specified in the notice. (19 Ill. 156.)

3. The sale should have been set aside for the reason that the order of sale was so far incomplete as to vitiate all proceedings of the sheriff thereunder. In this particular, the statutes of Kansas contemplate (Gen. Stat. 1868, ch. 80, § 446) that the entire amount of the judgment shall be set forth in the writ, and this would include any interest that might have accrued on the amount of the original judgment from the day of its rendition to the time of issuing the writ. (Gen. Stat. 1868, ch. 51, § 6.)

4. The proceedings of the sheriff under the writ were also void, for the reason that the property was sold without an appraisement, whereas the order of sale did not provide for such a sale. The proceedings of the sheriff were void, in that he failed to comply with the command of the writ. It must expressly appear in the writ that appraisement is waived, or it is the duty of the officer to appraise before making sale. (Gen. Stat. 1868, ch. 80, § 453; Laws 1872, ch. 66, § 1.)

5. This sale should have been set aside on account of the gross inadequacy of the amount bid by Cooper, $100. Ac-

cording to the affidavits filed for plaintiffs, the value of the land sold was at least $900; and according to defendant, Cooper's affidavits, the value may be determined at a somewhat smaller amount.　　∖

We do not understand that our courts are deprived of all discretion or power in regard to confirming sales, especially in foreclosure cases. This court recognizes this equity power in the case of *Dewey v. Linscott*, 20 Kas. 688, 690. See also *Strong v. Cotton*, 1 Wis. 445.

*Keeler & Gephart*, for defendant in error S. S. Cooper:

1. The time from the date of the first publication of the notice in question until the day of sale, including the day of the first publication and the day of sale, was thirty-one days. (19 Kas. 222; 18 id. 206; 20 id. 195.) Counsel for plaintiffs seem to rest their case, as to computation of time, upon the decision in *Garvin v. Jennerson*, 20 Kas. 371; but it does not at all follow that a notice required to be published "for at least thirty days," must be published (if in a daily paper) in thirty-one consecutive issues. In respect to the filing of depositions, the statute, in effect, fixes the least time which must elapse *between* the completion of one act and the commencement of another; while as to notice of sheriff's sales the statute only fixes the least number of days *for* or *during* which the notice must be published. If the statute (§ 457 of Code) had said, *for at least thirty days, but not more than forty days*, it would be clearly apparent that the phrases "at least" and "not more than" were intended to fix a minimum and maximum time, and were not intended to vary the ordinary rule for computing thirty or forty days' notice. It seems that the legislature, by using the word "for," intended to demand a notice which should *continue* up to the day of sale, and by the words "at least thirty days," meant to fix a minimum time, or the least number of days during which the notice should be repeated or continued.

2. As to the time of sale, the notice was even more specific than was necessary. The naming of an hour was not

essential.   There is no pretense that in this case anyone was misled, or that any advantage as to time was taken over anyone who desired to bid.

3. The failure of the clerk to state in the writ, or to indorse thereon, the rate of interest on the judgment, could not invalidate the proceedings under it.   The writ correctly stated the amount and date of the judgment.

4. The statute (Laws of 1872, ch. 66, §1) does not require that the special execution shall state that appraisement has been waived in the mortgage.   The office of the writ is to direct the sheriff what to do, and is neither to explain how the court arrived at its judgment, nor to direct the sheriff to abstain from doing what is not required.   In this case the writ directed the sheriff specifically " to cause to be advertised and sold."   The command in an ordinary special execution, and in the printed blank used for this writ is, " to cause to be appraised, advertised, and sold," and in issuing this writ the clerk struck out and omitted the word "appraised." The sheriff evidently understood the command to be to sell without appraisement, and that is the plain import of the words used.   Even if another construction could have been put upon the writ, it is now immaterial, because the sale was actually made in accordance with the decree.

5. The value of the land in question, according to the average judgment of plaintiff's witnesses, was $933, and according to the average judgment of defendant Cooper's witnesses, was $565.

In this case there is no pretense of any fraud, collusion, or undue practices on the part of the defendant Cooper.   He was a stranger to the action, and had no sort of interest in the plaintiff's claim, or defendant Cotton's land.   The parties to the action willfully stayed away from the sale.   The debtor and creditor (plaintiff Northrop and defendant Cotton) had voluntarily entered into a contract that the land should be sold at public auction at whatever price should be bid, without regard to the value of the land.   It seems to us that they are in no better position to attack the sale for inadequacy

of price than they would be if they had themselves acted as auctioneers and struck the land off to Cooper for $100.

There is nothing that brings this case within any rule for setting aside a judicial sale laid down in any case cited by plaintiff in this case, or cited by either party in the case of *Dewey v. Linscott,* 20 Kas. 684.

The opinion of the court was delivered by

BREWER, J.: After a decree had been properly entered, foreclosing a mortgage, an order of sale was issued, the property advertised for sale, and sold to S. S. Cooper for $100. After the sale, both mortgagor and mortgagee file motions to set aside, while the purchaser files one to confirm the sale. The latter is sustained and the former overruled, and upon these rulings the plaintiffs in error come to this court.

The first question is as to the publication of the notice of sale. It is claimed that this was not continued for a sufficient length of time. The first publication was October 13th, and the sale November 12th. This, excluding the day of sale, would give thirty days' publication; excluding both the day of sale and the first day of publication, would leave only twenty-nine days. The statute requires publication "for at least thirty days before the day of sale." This, counsel contend, requires that thirty full days elapse between the day of the first publication and the day of sale; and they rely upon the case of *Garvin v. Jennerson,* 20 Kas. 371, in which this court decided that under a statute requiring a deposition to be "filed at least one day before the day of trial," a full day must intervene between the day upon which the deposition was filed, and that upon which the trial is commenced. The distinction is this: the filing of the deposition is a single and instantaneous, the publication a repeated and continuous, act. So, when the statute requires that a deposition be filed at least one day before the day of trial, it means that that single act shall be done and completed at least one day before, but the act of publication is not completed at least thirty days before, but only commenced then, and continues from its

commencement up to the day of sale. We had occasion to notice this language in the case of *McCurdy v. Baker*, 11 Kas. 111, and held that the word "for" required a continuous publication — the word "for" being used in the sense of "during," so that the publication must be during at least thirty days, and continued up to the day of sale. The first publication is no more than any other. The argument would be just as strong that thirty full days must intervene between the day of the last publication and the day of sale, as that it must intervene between the day of the first publication and that of the sale. Indeed, it would be stronger, for that would be treating the publication as a single act, and to be completed at least thirty days before, while the other treats it as a continuous act, part of which is to be performed and part not, at least thirty days before the day of sale. Here there were thirty days of publication before the day of sale. The notice was therefore published "for at least thirty days before the day of sale," and the motion to set aside the sale upon this ground was properly overruled. See the case of *Hagerman v. O. B. & S. Asso'n*, 25 Ohio St. 186, in which a similar construction is put upon these words, and the day of the first publication held to be included within the required thirty days.

Secondly, it is contended that the notice was defective in not fixing the precise time of the sale. It read : "On Monday, the 12th day of November, 1877, between the hours of 10 o'clock A. M. and 4 o'clock P. M. of that day," etc. We think such a notice sufficient. It is not essential that the precise hour be named. It may be that if it were shown that any person appeared at any time between the specified limits ready to bid, and that the property was struck off at less than its value, the court should in its discretion set aside the sale; but nothing of the kind appears here. The motion is rested upon the supposed defect in the notice, and without a suggestion even that any one was misled, or desired to bid. Counsel cite the case of *Trustees, etc., v. Snells*, 19 Ill. 156, in which a sale was set aside when it appeared that the property had been sold

at an enormous sacrifice, and that the notice simply stated that on a given day the sale would be made; yet that very case recognizes the propriety of a notice like the one before us. In the opinion the court says: "The object of a public sale is, by fairness and competition to evolve the full value of the property exposed, and produce that value in the form of money. This can, as a general rule, only be done by making the sale at a convenient or public place, accessible to bidders, and during the ordinary business hours of the day. The notice should have stated the hour of sale, or that the sale would be made between certain named hours of the business portion of the day." We think a better practice would be to have the notice state the precise hour of sale, and if in any case injury is shown to have resulted to either judgment debtor or creditor from a failure to state such precise hour, the sale should be set aside; but where the notice states that the sale will be made between certain named hours of the business portion of the day, the sale ought not to be set aside upon a mere possibility of injury from such notice.

A third objection is, that the order of sale was defective in not stating the rate of interest which the judgment bore. It in fact bore twelve per cent. interest. We do not think this vitiates the order or the proceedings under the order. The amount for which the property was sold was far below that of the judgment, and a mere irregularity which does no one the slightest injury should not work an entire overthrow of proceedings had under the order.

A fourth matter is, that the order of sale did not specifically direct that the sale be made without appraisement. The judgment and decree so directed, but the order directed that the property be "advertised and sold according to law." This too, if a defect at all, is not one sufficient to justify a setting aside of the sale. The decree directed a sale without appraisement, the law authorized such a decree, and the sale was so made. It was therefore made according to law.

A final matter is, the inadequacy of the bid. The property was sold for $100. Several affidavits were read. The

value of the land, according to the average judgment of plaintiff's witnesses, was $933, and according to that of the purchaser's witnesses was $565. Clearly, then, the property was struck off for a sum far below its actual value. Is this sufficient to justify the setting aside of the sale? No excuse is shown for the absence of plaintiff or defendant in the judgment at the time of sale. There is nothing to show that they were ignorant of or misinformed as to the time, or that they were prevented from attending, or even that they purposed or desired to attend. So that as the case stands before us, the parties interested, knowing of the sale, intentionally stayed away and took the chances of other parties offering full value, and when disappointed in this expectation, and after the property had been struck off to a party bidding in good faith, come into court and ask that the sale be set aside because the sale had not been for anything like the real value. In other words, at their instance the property is put up to be sold to the highest bidder, and when it is so sold they complain because such bidder did not bid more. It was the officer's duty to strike it off to the highest bidder, a, duty they had called upon him to perform. He acted in good faith. The purchaser acted in the same good faith. He offered what he was willing to give. He was under neither legal nor moral obligation to offer more, and the property was struck off to him at his bid. There was nothing in the conduct of the officer or purchaser to justify a court of equity in depriving the latter of the benefits of his purchase. And when the parties interested, with full knowledge, deliberately let the matter go by default, what right have they to ask a court of equity to interfere? The result has followed from their own *laches* and indifference. The case is very different from that of *Dewey v. Linscott*, 20 Kas. 684, which is referred to by counsel. There the creditor made reasonable efforts to be represented at the sale, but failed through no fault of his. His misfortune, after proper endeavor, was a basis for the interference of a court of equity. Here there was no effort,

and the absence was voluntary. In that case we said: "Now if the plaintiff, being present at the sale, had made no bid, or, if aware of the sale, he had made no effort to attend or be represented, or had been culpably negligent in his efforts therefor, or if after sale he had unreasonably delayed in making his application to the court, so that there was in fact nothing but the mere inadequacy of the price as a ground for his application, the court might perhaps fairly say that there was no ground for interference." The views thus expressed we reaffirm. Here there is mere inadequacy of price, and not such inadequacy as of itself is sufficient to justify a court in disturbing the sale. Indeed, it is doubtful whether mere inadequacy would ever be sufficient of itself to justify the setting aside of a sale. If the creditor was present and saw the property going at a sacrifice without bidding himself, he would not be permitted to complain of the inadequacy of the price, and avoid the sale. And if knowing of the sale he voluntarily stays away, and takes the chances of others bidding full value, he is in but little better position to complain. It is for the interest of debtors and creditors alike, that public sales be upheld. They will be more attended, and better prices obtained. Few will care to bid, if, after bidding in good faith, having the property struck off to them, and their money paid to the officer, they have to run the gauntlet of an inquiry into the sufficiency of their bid. Sales purporting to be to the highest bidder should be so made, and the highest bidder acting in good faith should have a guaranty that his bid will obtain the property, even though he may not have bid as much as some may think the property worth. But it is unnecessary to decide that no inadequacy is great enough to avoid the sale; it is sufficient to say that that appearing in this case is not.

We see no error in the ruling of the district court, and it will be affirmed.

All the Justices concurring.