**WHEELER & MOTTER MERCANTILE CO.
v. MILLER et al.**

No. 8349—Opinion Filed Jan. 29, 1918.

Rehearing Denied Sept. 24, 1918.

(175 Pac. 224.)

**1. Judicial Sales—Vacation—Inadequacy of Price.**

If unaccompanied by circumstances showing unfairness in the conduct of the successful bidder or sufficient to raise a presumption of fraud, a judicial sale will not be set aside for mere inadequacy of price, unless it is so great as to shock the conscience.

**2. Mortgages—Foreclosure Sale—Finality—Policy of Law.**

It is the policy of the law that a judicial sale shall be final; and in the absence of fraud or unfairness and a clear showing of gross inadequacy of price, one who has acquired the interest of a mortgagor in mortgaged property is not entitled to have a foreclosure sale thereof, made conformably to statute, set aside for the reason that, having failed to receive other than the statutory notice of the time of such sale, he was not present thereat, particularly where his failure to receive notice of such character is not attributable to the conduct of the purchaser.

(Syllabus by Bleakmore, C.)

Error from District Court, Tillman County; John W. Hayson, Assigned Judge.

Objections by the Wheeler & Motter Mercantile Company, purchaser from trustee in bankruptcy of Miller Bros., incorporated, to the confirmation of a foreclosure sale in case of Interstate Mortgage Trust Company against Miller Bros., a corporation, and its trustee in bankruptcy, to Bettie Miller. Sale confirmed, and the objector appeals. Order affirmed.

M. S. Singleton and Harris & Nowlin, for plaintiff in error.

Robinson & Whiteside, for defendants in error.

Opinion by BLEAKMORE, C. On November 18, 1909, the Interstate Mortgage Trust Company commenced suit in the district court of Tillman county to foreclose a real estate mortgage. Subsequently by amended petition, Miller Bros., a corporation which had acquired the mortgagor's title to the premises and later been adjudged a bankrupt, and Robert Landers, trustee in bankruptcy of the estate of Miller Bros. Company, were made parties defendant; and on March 26, 1915, judgment was rendered for plaintiff in the sum of $2,641.82, interest, attorneys' fees, and costs, foreclosing a mort-gage and ordering a sale of the property. On July 7, 1915, the trustee in bankruptcy, as an asset of the estate of Miller Bros. Company, sold its interest in the property to Wheeler & Motter Mercantile Company, and on October 1, 1915, executed and delivered his deed evidencing such sale.

On September 29, 1915, an order of sale issued out of the district court of Tillman county directing the sheriff to sell the mortgaged property in satisfaction of the judgment of March 26th; pursuant to which the same was sold for $2,850 to Bettie Miller, who it appears is the mother of Stewart Miller of the Miller Bros. Company. On December 2, 1915, Wheeler & Motter Mercantile Company filed in the district court of Tillman county objections to the confirmation of the sale to Bettie Miller, setting forth its purchase of the property from the trustee in bankruptcy, and that its representative and agent, one C. J. Tuohy, had called upon Wilson & Roe, a firm of lawyers residing at Frederick, in Tillman county, who were attorneys for plaintiff in the foreclosure suit, and had employed them "to institute certain litigation against the occupying tenant of such property, for the recovery of the rents and profits therefrom, and also employed them and engaged their services to keep him advised and notify him of the date of the sale of the real estate pursuant to the order of the court in this action"; that thereafter Tuohy became sick and was confined to his bed for several weeks, unable to look after any business; that in August, 1915, Wilson & Roe had written him to the effect that they would send him notice of such sale in ample time for him to attend the same; that by reason of such letter and employment he relied solely upon Wilson & Roe to notify him of the date of such sale; that said attorneys through oversight or neglect failed to so notify him, and he was thereby prevented from attending the same and protecting the interest of the principal; that he was ready, willing, and able to have bid at such sale an amount sufficient to protect its interest; that the property was worth a sum largely in excess of the amount for which it was sold. It was also alleged on information and belief that there was some kind of an agreement between the plaintiff and Stewart Miller and his mother to suppress competitive bidding at such sale. There was also a tender of the amount of the judgment and costs, etc. Upon hearing of motion to confirm the sale, together with the objections thereto, on December 15, 1915, the sale was confirmed. Wheeler & Motter Mercantile Company has appealed.

The sole question presented is the alleged abuse of discretion by the trial court in confirming the sale. It appears from the evidence upon the hearing of the objections to the confirmation of the sale that the judgment in favor of the mortgagee had theretofore been assigned to the purchaser, Bettie Miller. Some time after the rendition of such judgment Mr. Tuohy, in a conversation with Mr. Wilson, of the firm of Wilson & Roe, stated that he purposed bidding in the property at the sheriff's sale, and he later wrote a letter inquiring the date of such sale, which Mr. Wilson answered under date of August 21, 1915, as follows:

"The sheriff's sale for the Miller property foreclosed on by the Interstate Mortgage Company will be advertised immediately after September 26th. The advertisement will have to run five weeks, so it will make the date of the sale some time about the first of November. We will send you the notice of the sale so you will have ample time to be here on the date of the sale."

Mr. Wilson testified:

"Mr. Tuohy when he came down said something about buying this place by virtue of a sale of the equity of the trustee of the Miller Bros. Company, over at Lawton, and when he spoke about the sale, it was my understanding that the reason he was interested in it was owing to the fact that he had purchased the equity of the trustee. I was over at Lawton some two weeks after I had written this letter in August, and I was informed that the sale by the trustee of these premises and the action of the referee in allowing them to be sold had been reversed by the federal court, by Judge Cotteral, and that was the reason that I did not notify him; I just took it for granted, and will admit that it was a mistake on my part, considering that he did not have any equity, and I did not pay any more attention to it, and when I received that letter November 1st that morning, the morning of the sale I called his attorney, Mr. Singleton, of course I did not know where I could find Mr. Tuohy, and I found that he was at Guthrie, and I tried to get into communication with Mr. Tuohy, so he could send a man down to bid, but I did not get him, and he did not have time to come down here. That was the real reason that I did not let him know; I just let the matter slip my mind, and I thought that all of the interest that he had in he farm had been taken away because I understood that the ruling had been reversed, and both of them were cases of mistake."

On cross-examination by Mr. Wilson, Mr. Tuohy testified:

"Q. In fact you understood at that time that we represented the plaintiff, the Interstate Mortgage Trust Company, and told you of that fact? A. Yes, sir. Q. And that we agreed to send you a copy of the publication notice, that was purely a matter of accommodation to notify you of the sale? A. Yes, sir."

Mr. Tuohy stated that it was his purpose to be present at the sale, but he nowhere testified that had he been present he would have bid in excess of the amount for which the property sold. He also stated that he had been ill for some time prior to October 30, 1915, at which date he wrote the following letter, concerning which Mr. Wilson had testified:

"Messrs. Wilson & Roe, Frederick, Okla.— Gentlemen: I have been down sick for the last sixty days and am just now getting around again. I will be here at Guthrie for the next week, and I wish to know what the status is of the Miller foreclosure at Chattanooga. The last advice I had from you you thought the sheriff's sale would come off some time early in November. You promised to send me a copy of the paper containing the notice, but I have never received it. Kindly look the matter up and give me the latest information on this matter, and oblige."

The evidence as to the value of the property is conflicting, but in our opinion is insufficient to establish gross inadequacy of the price for which the same was sold; nor is there any showing of fraudulent conduct on the part of the purchaser. It appears by the record and seems to be conceded that the sale was made in all respects conformably to the statute.

In response to his inquiry, the attorneys for plaintiff in the foreclosure action advised the agent of plaintiff in error of "about" the time of the sale, which was in fact the date on which it occurred; and the trial court may have thought that, possessed of this information, although ill for 60 days, Mr. Tuohy, or in any event his principal, who knew or might properly have known of his illness, should have taken additional measures to ascertain the exact date of the sale, if it was in fact desirous of bidding thereat. But however this may be, it is obvious that the failure of the plaintiff in error to have a representative at the sale was not occasioned by any unfairness in the conduct of the purchaser, Mrs. Miller.

The rule governing such cases is announced in Wheeler & Motter Merc. Co. v. Wright, 64 Okla. 97, 166 Pac. 184, as follows:

"A judicial sale will not be set aside for mere inadequacy of price, unless it is so great as to shock the conscience. A sale

may be set aside for gross inadequacy of price, if accompanied by circumstances showing unfairness in the conduct of the successful bidder, or any circumstances sufficient to raise a presumption of fraud."

As stated in the opinion, supra, "The purpose of the law is that a judicial sale shall be final." And in the absence of fraud or unfairness, and a clear showing of gross inadequacy of price, one who has acquired the rights of the mortgagor in mortgaged property is not entitled to have a foreclosure sale, made conformably to statute, set aside for the reason that, having failed to receive other than the statutory notice of the time of such sale, he was not present thereat, particularly where his failure to receive notice of such character is not attributable to the conduct of the purchaser.

We are of opinion that the record discloses no abuse of discretion in confirming the sale; and the order of the trial court should be affirmed.

By the Court: It is so ordered.