Norris v. Evans.

---

No. 21,344.

L. M. NORRIS, *Appellant,* v. EMMA EVANS et al., *Appellees.*

### SYLLABUS BY THE COURT.

FORECLOSURE SALE—*Confirmation Set Aside—Redemption Allowed.* In a suit by the holder of a junior judgment to set aside the confirmation of a foreclosure sale and permit him to redeem from the prior judgment, *held,* on the facts stated in the opinion, it was error to deny the relief prayed for.

Appeal from Barber district court; GEORGE L. HAY, judge. Opinion filed March 9, 1918. Reversed.

*G. M. Martin,* of Medicine Lodge, *Sam K. Sullivan,* and *Hal S. Burke,* both of Newkirk, Okla., for the appellant.

*Samuel Griffin, J. N. Tincher,* both of Medicine Lodge, and *A. L. Noble,* of Winfield, for the appellees.

The opinion of the court was delivered by

PORTER, J.: The suit was one in the nature of a bill to redeem and to set aside the confirmation of a sale in a foreclosure proceeding. The plaintiff appeals from a judgment denying him relief.

L. M. Norris, the plaintiff, resided in Illinois. He was the holder of a mortgage on a farm in Barber county, subject to a

prior mortgage to the Warren Mortgage Company. In May, 1916, an action in foreclosure, brought by the Warren Mortgage Company, was pending in the district court. Norris filed a cross petition setting up his second lien. Seward I. Field was the local attorney for the Warren Mortgage Company, and had traded for the equity in the land, subject to both mortgages. His deed was recorded on the 4th day of March, 1916. On May 1, he wrote to Carl F. Truitt, who resided in Oklahoma, and who was the attorney for L. M. Norris, the following letter:

"I have just learned that you represent the cross-petitioner and second lien holder in the case of The Warren Mortgage Company against Emma Evans, pending in our court, No. 4997. In this connection I represent The Warren Mortgage Company, holders of the first mortgage, and am writing you to state that court will convene here, regularly, on the 15th day of May, at 2 o'clock in the afternoon, and we can probably arrange to take a judgment at that time. Our court is supposed to convene here on the 8th day of May, but I understand the judge is not going to get down here until the 15th, in the afternoon. It might be that if you could send me figures, I could arrange to take judgment on behalf of both parties as per journal entry and we could agree upon the journal entry without any necessity of your making a trip here. Of course it will be all right for you to come on and we can take the judgment here that day any way, unless you care to submit figures and I will take judgment for both parties if you desire."

On May 10, Mr. Truitt replied as follows:

"We have your letter of a few day ago in which you so kindly offer to represent us at the next term of district court in your county, which convenes in about a week, in the foreclosure suit now pending therein and in which we represent the cross-petitioner. We enclose herewith a brief suggestion of some parts of the journal entry of judgment that we would like incorporated in the journal entry as approved by the court and as filed in this cause. The enclosed is meant only as a suggestion of about what we would like in part, we have also made a brief reference to some parts of the judgment in favor of your client, the plaintiff, only because we could better explain what we were getting at in our part of the journal entry, and is not intended as any suggestion of what your part of the journal entry should or should not be—you are very capable of doing that part yourself. If order of sale issues after six months, as in this state, then you will of course make this journal entry show such time, the main thing we want is a personal judgment against L. Dora Randall, Lucinda Randall and Emma Evans, in addition, of course, of the judgment foreclosing this mortgage. If you have time before court convenes to send us a copy of the journal entry as compiled by you including our part and as ready for the approval of the court, we will be

Norris v. Evans.

glad to look over same and will return same at once if you so desire. We ask this since we are anxious to get proper judgment and at same time do not feel that it is necessary for us to come up there since you have been good enough to volunteer your services in this matter. Any expenses in drawing this journal entry, stenographer fees, etc., we shall expect to reimburse you for our part."

In answer to Mr. Truitt's letter, Mr. Field wrote, May 12, as follows:

"I have your letter of May 10th in reference to case of The Warren Mortgage Company vs. Emma Evans and others. In this connection I did not mean to imply by my letter that I wanted to represent the cross-petitioner, only that I thought I could save Mr. Truitt a trip over here, as in foreclosure matters, we usually find that there is nothing to do except to agree upon a journal entry, and I thought perhaps it would be an unnecessary trip for him and we could handle it through the mails, as I should be glad to do as a matter of courtesy. In this connection, however, while I represent the plaintiff, locally, it also happens that I am the owner of the land against which this mortgage is being foreclosed. I explained this matter to the general attorney for the Warren people and thought it due you to advise you to the same effect, although my deed is on record. I am forwarding your suggestion as to the journal entry to Mr. M. M. Suddock, of Emporia, the general attorney for the plaintiff, and am suggesting to him that he prepare the journal entry or I will do so if he wishes me to.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Again, you have our old Kansas foreclosure law in Oklahoma, which provides a stay of execution for six months and then sale, with immediate delivery of deed on confirmation. We have a redemption law here under which we sell the property immediately after judgment or as soon as it can be advertised. Upon confirmation of this sale a certificate of purchase is given to the purchaser and the owner of the property allowed eighteen months from the date of the sale to redeem from the sale at the amount sold for, with interest; upon failure to make such redemption during the eighteen months, a deed then issues to the purchaser and during which eighteen months the owner of the property is entitled to possession. Junior creditors, such as second mortgage holders, like yourself, also have redemption rights and may redeem from the certificate holder and thereby add their junior claims to the amount of the certificate, and the owner redeeming thereafter must pay the amount of the certificate and the amount of the junior creditor's claim, such as yourself, who has redeemed from the certificate. These are mere matters of practice, however, and we always take care of them in the journal entry and it works out very simply. This, of course, would change some of your suggestions in the journal entry but the statute will be followed in these matters.

.    .    .    .    .    .    .    .    .    .    .    .

"As above stated, I am forwarding your suggestions and copy of this

letter to Mr. Suddock to draw the journal entry, or he may refer it back to me and I will draw it."

On May 16, Mr. Truitt received another letter from Mr. Field, as follows:

"In the case of Warren Mortgage Company vs. Evans, judgment was rendered this morning as follows: 'Service by publication approved and judgment for plaintiff in the sum of $3224.50. Foreclosure of mortgage and awarded first lien. Judgment for cross-petitioner, L. M. Norris, for $3828.80, foreclosure of mortgage and awarded second lien. Original papers filed for cancellation. Period of redemption fixed at eighteen months.' I am busy trying jury cases but so soon as I get a few moments time, I will prepare journal entry and forward to you for approval together with office copy for your files. I believe this is exactly in accordance with your figures and idea of the case, except that I have omitted the item of $200.00 attorney fee. I took this matter up with the court and I think there is no question as to the correctness of my position under the Kansas law. If you care to present this matter you may come up and we will take it up, or present it to the court through the mail if you prefer, but I believe the journal entry will stand as the order is rendered. I trust this is satisfactory."

On May 22, Mr. Field wrote again, as follows:

"In the case of The Warren Mortgage Company vs. Evans, et al., I enclose herewith for examination a journal entry of judgment I have prepared in accordance with the judgment rendered on the 16th. In preparing this journal entry I have made it read to render a personal judgment in favor of your client, L. M. Norris, and against the defendants, Randall, as suggested by you, so that it will be good for what it is worth as a personal judgment. Will you kindly examine same, and if it meets with your approval, sign and return to me at once, and I will get it signed by the judge and filed before court adjourns and the judge goes home, which will be some time this week. This provides for an 18 months period of redemption to the defendants and junior lien holders, such as your client, from the date of the foreclosure sale."

Mr. Truitt made no reply to any of the letters except the first one. He testified that on receipt of the letter of May 22 he talked with Mr. Field over the telephone, and that on June 7 he wrote Judge Hay; that Judge Hay answered, stating that in his opinion the showing was not sufficient to justify shortening the period of redemption; that he tried several times during the month of June to reach Mr. Field by telephone, but was unable to get in communication with him; that on the 28th of June he wrote Mr. Field, inquiring at what time the real estate would be sold and if the same had been advertised for sale, but received no reply; that in the first days of July he tried to com-

Norris v. Evans.

municate with him over the telephone, but received word that Mr. Field was out of town. Shortly thereafter he telephoned the clerk and was told that the land had been sold, the sale confirmed on the 3d day of July, and that redemption had been made.

It appears that on the 27th of May Mr. Field, as attorney for the Warren Mortgage Company, caused an order of sale to be issued and the sale advertised for July 1. At this time the journal entry had not been settled or agreed upon. The land was sold and bid in by Mr. Field for the Warren Mortgage Company for the amount of its judgment. Mr. Field was the only bidder at the sale. On the same day he filed a motion for confirmation. On July 3 there was a special session of the court, at which the sale was confirmed, and at the same time Mr. Field presented the journal entry to the judge, and it was approved. The amount of the Warren Mortgage Company judgment was $3,224.50. The amount of the Norris judgment, which was a second lien, was $3,828.80. Immediately after the sale was confirmed Mr. Field paid the amount of the Warren Mortgage Company's judgment and redeemed the land as owner.

Mr. Field was a witness and produced a letter written by him on May 23, 1916, to Judge Hay, as follows:

"In the case of the Warren Mortgage Company vs. Evans, you will perhaps recall that on the 16th I took judgment by default for the plaintiff for something over $3,200.00 and for cross-petitioner on second mortgage on behalf of Mr. Carl F. Truitt for something over $3,800.00. I sent journal entry to Mr. Truitt for approval, and he calls me up to say that he wants the period of redemption reduced to less than 18 months. After talking with him over the long distance telephone, I suggested that he send the J. E. direct to you and if you saw fit to reduce the period of redemption on his showing it would be all right with me; so I am writing to give my side of it, as he will probably explain his position. I do not wish the period of redemption reduced, as I am the owner of the equity, personally. Perhaps that ought not to have any weight, but the facts are that neither of the mortgages on the land is a purchase money mortgage—both represent loans; and also, the land is rented, mostly farmed, balance in pasture, also rented, all enclosed by fence, and in the actual possession of my tenant. Taxes are in default, but property is worth much more than mortgages and taxes. I have just recently acquired it, during the pendency of the case, and wish to merge all indebtedness against it into one certificate of purchase so I can handle it to better advantage."

He further testified that he did not write Mr. Truitt at any time to tell him that the notice was running and that the property would be sold, his excuse being that he had written Mr. Truitt four letters to which he had received no answer. He was asked,

"Q. You did n't notify Mr. Truitt it was bought and there was going to be a session of court here on the 30th? A. No, sir.

"Q. When did you first know there was going to be one here on the 30th? A. The county attorney and I and some other attorneys, I am not sure who, there were several talking. There was somebody in jail and wanted to plead guilty and get away to the penitentiary and serve his time. It was discussed calling the judge down and I think somebody wanted to plead guilty and get away and I think that was the occasion of a special session.

.    .    .    .    .    .    .    .    .    .    .    .

"Q. You were interested in the judge coming down so as to get a confirmation on the 30th? A. Yes, sir.

.    .    .    .    .    .    .    .    .    .    .

"Q. You got it done, did you not? A. Yes, sir.

"Q. And then you immediately redeemed it? A. Yes, sir, I did.

"Q. You did n't mean to tell the court it was not your intention in writing this letter that Mr. Norris would have 18 months to redeem as well as you would have— A. Understand this. When this gentleman wrote me back and disclosed to me that he did not know anything about the Kansas foreclosure laws I undertook, in a two page letter to explain it to him and I think I explained it to him fairly and told him what his rights were and what the redemption period would be and that was before judgment was rendered and his client would have his right. This letter is in evidence here.

.    .    .    .    .    .    .    .    .    .    .

"Q. You were sufficiently interested to have a special day by request and have some other reason why the court should be here? A. I did not order that day.

"Q. You knew if the court did not come until October you could not get a confirmation of that sale until he did come? A. I think I could have got a comfirmation on the 9th of October because everything was regular and clean and clear and I still think if the court had not got down here all summer (and he usually comes two or three times) on the 9th day of October he would have confirmed that sale."

He further testified that he was the only bidder at the sale and bid for his client, The Warren Mortgage Company. He denied receiving a letter of June 28 asking about the time of sale, and denied that in the telephone conversation there was anything said about postponing the proceedings in order to present the matter of the period of redemption to Judge Hay.

His testimony is that, in the conversation over the telephone Mr. Truitt said he had received the journal entry, and that it was all right, except that he did not like the eighteen months' period of redemption that was allowed; that he then informed Mr. Truitt under what circumstances the judge would reduce the period, and that he did not think Mr. Truitt was entitled to have it fixed at six months, but told him if he was not satisfied with the eighteen months to send the journal entry to Judge Hay and present his side of the case, "and I will write him a letter and tell him my side, and if Judge Hay sees fit to reduce the period of redemption it will be all right with me."

The land in controversy is shown by the testimony to be worth from $6,400 to $8,000. Under the judgment of the district court the plaintiff loses his lien, and Mr. Field obtains the land for the amount of the first lien.

The plaintiff in the present suit was represented in the foreclosure proceedings by an attorney who resided in Oklahoma and who seems to have been unfamiliar with the Kansas laws respecting foreclosures and the rights of junior lien holders. Even after discovering his ignorance of the Kansas statutes, the attorney was negligent in failing to make himself familiar with the law affecting his client's interest. Apparently he relied upon the fairness and courtesy of the defendant's attorney to protect his client's rights. Irrespective of Mr. Field's motive, it is obvious, we think, that the natural effect of his letter offering to act for Mr. Truitt, together with the apparent candor and frankness of all the other correspondence, had the effect of lulling the attorney into the belief that no advantage would be taken of his ignorance of the Kansas law, nor of his failure personally to give attention to the date of the sale. Originally Mr. Field owed no duty to the plaintiff or his attorney; in fact, he represented opposing interests, those of his own client and of himself as owner of the land; but it would be going too far to say that after encouraging the nonattendance of the opposing attorney at court, by voluntarily offering to act for him in taking the judgment and to prepare a journal entry to be agreed upon, he was in a position where in conscience and equity he could take advantage of the absence of plaintiff's attorney, and especially of that

attorney's ignorance of the fact that a sale of the property was pending, and that a special session of court had been arranged at which confirmation could be had. True, in the second letter he disclaims any intention of acting as the attorney for Mr. Truitt's client, but this frank statement of itself might have tended only to increase the attorney's confidence.

Although the petition alleged actual fraud and an attempt to procure an unconscionable advantage of the plaintiff by a studied attempt to deceive his attorney, it was not necessary that this claim should be established in order to entitle the plaintiff to the relief demanded; and the judgment of the trial court is that fraud had not been proved. Since the procedure in confirmation of sales was amended in 1893 (Laws 1893, ch. 109, § 26; see Civ. Code, § 500), the trial court is not expected to close its ears to all equitable considerations and confirm a sale as a matter of course, merely because the record shows no irregularity in the movement of the judicial machinery by which the sale was accomplished. Even before the statute was amended, it was held that, "Inadequacy of price, taken alone, is seldom if ever sufficient to authorize the setting aside of a sheriff's sale; yet great inadequacy of price is a circumstance which courts will always regard with suspicion, and in such case, slight additional circumstances only are required to authorize the setting aside of the sale." (*Means v. Rosevear,* 42 Kan. 377, 383, 22 Pac. 319.) To the same effect is *Dewey v. Linscott,* 20 Kan. 684.

In *Bank v. Murray,* 84 Kan. 524, 530, 114 Pac. 847, and in other recent cases, the amendment has been referred to as imposing upon the court the same powers and responsibilities that rested upon the chancellor of the old court of equity in a suit in the nature of a bill to redeem. In the case last cited the court approved the following language from *Graffam v. Burgess,* 117 U. S. 180:

" 'Looking at the whole case, the traces of design on the part of Graffam to mislead the complainant, to lull her into security, and thus to prevent her from redeeming the property, are abundantly manifest, and such design must be assumed as an established fact. . . . As already perceived, we do not rest our conclusion alone upon the gross inadequacy of the consideration of the sale; but upon that, in connection with the unfair conduct of the defendant in taking advantage of the complainant's

Norris v. Evans.

ignorance of the sale, and giving her no intelligible notice or intimation of it, or of his intended seizure of the property after the year of redemption had passed, but standing by and seeing her expend large sums of money upon it, even after the year had expired. This, we think, presents a case sufficiently strong to justify the action of the court below, at least to the extent to which it went in making the decree appealed from [allowing the owner to redeem].' (p. 190.)"

The opinion also quoted with approval from *Pewabic Milling Company v. Mason*, 145 U. S. 349, where, after stating the rule that there is a measure of discretion in a court of equity in such matters, Mr. Justice Brewer said:

"And after a sale has once been made, he will, certainly before confirmation, see that no wrong has been accomplished in and by the manner in which it was conducted." (p. 356.)

In *Bank v. Murray*, supra, we held, also, that, inasmuch as the entire evidence on which the trial court acted had been abstracted, "we may properly reach our own conclusions thereon." (p. 531.)

As the judgment stands, the plaintiff, who was himself without fault, and who offers to do equity by bidding the amount of the first and second liens or by redeeming from the first, is compelled to lose his entire lien, while one who purchased the property subject to both liens gets a clear title merely by satisfying the first, and is thus permitted to take advantage of the absence and neglect of plaintiff's attorney to attend and bid at the sale under such circumstances as, in our opinion, renders the judgment unconscionable and inequitable.

The judgment is reversed and the cause remanded, with directions to set aside the confirmation and permit plaintiff to redeem.

BURCH, J., concurs in the result.