## OKLAHOMA FARM MORTGAGE CO. v. HATCHER.

No. 15175—Opinion Filed March 3, 1925.

1. **Mortgages—Foreclosure — Confirmation of the Sale—Duty of Court.**

On motion to confirm the sale in a foreclosure proceeding, under section 709, Comp. Stat. 1921, it is the duty of the court to carefully examine the proceeding of the officer to determine if the sale has in all respects been made in conformity to the statutes, and if the same has been so made, it is the duty of the court to confirm the sale.

2. **Same — Sale Without Appraisement—Validity—Presumption of Regularity.**

In a foreclosure sale, without appraisement, the presumption must be indulged that the price bid and paid as shown by the return of the officer was the reasonable market value of the property, and this presumption can be overturned only by showing acts of unfairness or fraud on the part of those making the sale, or unavoidable casualty on the part of the persons who in good faith intended to be present and bid on the property to be sold, or such irregularities in the sale proceedings as would result in a defect of title and a depreciation of value.

3. **Same — Refusal of Court to Confirm Sale—Abuse of Discretion.**

The record examined, and held, the pleadings and evidence not sufficient to sustain the order of the trial court refusing to confirm the foreclosure sale; held, further, there was an abuse of discretion in the order denying confirmation.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Pontotoc County; J. W. Bolen, Judge.

Application by Oklahoma Farm Mortgage

Company, a corporation, for confirmation of a foreclosure sale. Robert E. Hatcher objected by motion to the confirmation, and the court rendered judgment overruling plaintiff's motion to confirm and sustaining defendant's motion to deny confirmation, and plaintiff appeals. Reversed, with directions.

J. F. McKeel, R. S. Kerr, and H. W. Harris, for plaintiff in error.

Webb &Blandford, Robt. Wimbish, and W. C. Duncan, for defendant in error.

Opinion by THREADGILL, C. This case presents error from the district court of Pontotoc county. On July 7, 1922, plaintiff in error, as plaintiff, filed suit against F. Earl Williams and his wife, Mayme Williams, on a note for $130 with interest from January 1, 1922; for taxes paid in the sum of $114.33; for $120 interest due on a first mortgage; $9 abstract fees, and $50 attorneys fee, and interest on foreclosure of its real mortgage on land in section 30, township 4N., range 5E., in Pontotoc county, being second to a $2,000 mortgage; and, after service on the parties and appearance on their part, on March 15, 1923, plaintiff obtained judgment for the indebtedness and foreclosure of the said mortgage. Thereafter, on September 17, 1923, an order of sale was issued to sell the land, which the sheriff of the county served and proceeded to give notice of sale for October 22, 1923. On the day set for the sale, the court made an order to stay the execution and postpone the sale to December 22, 1923. On November 26, 1923, the court made an order vacating the order to stay the execution and further directing that the property be sold as provided in the journal entry of the judgment. Thereafter, under an alias order of sale issued on November 27, 1923, the sheriff proceeded to give notice of the sale for December 31, 1923, at 10 o'clock a. m. at the front door of the court house in Ada, and, at that time, offered it for sale for cash to the highest bidder, subject to the $2,000 mortgage, and the plaintiff bid it in at $150.

On January 10, 1923, Robert E. Hatcher, one of the defendants, filed a protest against the approval of the sale and moved the court to set it aside on the ground that the same was not made and had in the manner and form as provided by law, and for the further reason that the sale was far less than the actual value of the land, and stated that if said sale was approved by the court he would suffer great and irreparable less and injury. On January 14, 1924, plaintiff filed a motion to confirm the sale, and on January 18, 1924, the said Robert E. Hatcher filed a motion to vacate and set aside the sale and stated the same ground as stated in the protest. On January 19, 1924, the court heard the motions to confirm and to vacate the sale. The defendant Hatcher called witnesses and offered testimony on his objections to the sale and the plaintiff objected to the introduction of any testimony on the protest or motion to set aside the sale on the ground that they did not state facts sufficient to entitle him to the relief asked. The court overruled the motion and plaintiff excepted.

N. B. Haney, a real estate man, who had lived in Ada about 13 years, testified that the market value of the land in question was $65 per acre. On cross examination he stated that this value had not existed for more than 6 months and that he had sold a little land in that neighborhood 60 days prior to this time with about that value.

J. A. Langford Shaw, a merchant in Ada, testified that he had dealt in leases in that neighborhood and land in that vicinity was worth from $40 to $50 per acre, but he did not know anything about this tract of land nor its value.

Gale Statler, a real estate man, who had lived in Pontotoc county for 25 years and was acquainted with the location of the land but had made no examination of it as to its value, but would say with what he knew of the vicinity that the market value was $60 per acre; that land in that neighborhood was worth $30 to $35 an acre as to oil and gas value; that 10 days or 2 weeks prior to that time leases and royalties were selling for that, but that he had never heard much about the oil value before the first of January and was not able to say what the value was on December 31, 1923.

C. W. Floyd, Jr., said he lived in Ada and had a farm northwest of Center, the neighborhood of the land in controversy, and was not acquainted with the cash market value of the land on December 31, 1925.

George M. Bradfield, a resident of Yukon, Okla., had been in Pontotoc county for over two years, had holdings in the oil business in that county; was acquainted with the land in controversy; that the same was worth on December 31, 1923, between $75 and $85 per acre according to his knowledge of oil values out there.

C. B. Coleman, a resident of Traker and

a sojourner in Ada about 10 days, was in the business of buying and selling oil leases; was acquainted with the land in the neighborhood of Center and knew the land in this lawsuit: and would say that it was worth on December 31, 1923, between $60 to $70 per acre. On cross-examination he stated that it had been worth that much for more than a year; that he had looked it up 5 or 6 months before this time; that he had been buying and selling "stuff" out there.

Ed Harrison, a resident of Ada for 20 years and in the real estate business, was acquainted with the land, and that its market value about three weeks prior to that date, including everything, was about $55 to $65 an acre. On cross-examination he stated that its agricultural value would be about $25 to $30 an acre and the oil lease value about $10 per acre and the royalty value about $10 per acre and that such values had existed in that neighborhood for about three weeks and that the oil activity in that neighborhood had existed since the first of January.

The court rendered judgment, finding the land worth $60 per acre, and having an equity of $7,600, that the purchase price, paid for the land in the sale, was grossly inadequate and inequitable, and denying the motion to confirm and sustain the motion and protest of the contestant, Hatcher, and the plaintiff excepted and brings the case here for review.

1. Plaintiff contends that the court committed error in sustaining the objections of R. E. Hatcher and refusing to confirm the sale.

The authority for confirming a sale of real estate is section 709, Comp. Stat. 1921, which provides:

"Confirmation of Sale. If the court, upon the return of any writ of execution, for the satisfaction of which any lands or tenements have been sold, shall, after having carefully examined the proceedings of the officer, be satisfied that the sale has, in all respects, been made in conformity to the provisions of this article, the court shall direct the clerk to make an entry on the journal that the court is satisfied of the legality of such sale, and an order that the officer make to the purchaser a deed for such lands and tenements; and the officer, on making such sale may retain the purchase money in his hands until the court shall have examined his proceedings as aforesaid, when he shall pay the same to the person entitled thereto, agreeably to the order of the court."

The courts in construing this section have held to the general rule that the act of the court in confirming or setting aside a judicial sale is an act of judicial discretion, but within certain definite limits beyond which it may affirmatively appear that there is an abuse of discretion. Such limits may appear on motion to confirm the sale where there is no good reason on the face of the record or made to appear for not affirming the sale in favor of the party objecting, amounting to fraud or unfairness to such party or where there is no mistake on his part resulting in injury without his fault, or unavoidable casualty to the parties desiring, in good faith, to bid, or irregularities in the proceedings which would result in defect of title and depreciation in value, and the same limits may appear on an application to set aside a sale after the confirmation is had.

It is the duty of the court to examine the proceedings of the officer making the sale and determine whether or not the sale has been made in conformity to the provisions of chapter 3, article 23, of the statutes, and if the court finds that the provisions of this article have in all respects been complied with, the court shall then express satisfaction and order a deed made to the purchaser. This procedure is made in the interest of fairness and good faith toward all parties to the judgment as well as bidders and purchasers of the property. If the land is offered for sale within six months after judgment of foreclosure, it must be appraised, section 704, and the sale must be for not less than two-thirds of the appraised value, section 706. Notice of sale must be given for 30 days before sale, by publication and posting, section 708. In case of foreclosure of mortgage, where appraisement is waived, the property cannot be sold for six months after judgment. This gives the mortgagor time in which to pay off the judgment and prevent sale of the property or time in which to determine the value of the property without appraisement, provided for in other cases, and find bidders for the land on the day of sale that it may sell for the best possible price. If he fails to redeem in six months or fails to take an interest in the sale and is not present on the day of sale without good cause he should not be heard to complain of the sale after it is made.

The objections to the sale stated in the contestant's motion were that it was not made and had in the manner and form as provided by law, and the consideration paid was grossly inadequate and unconscionable. The first objection is based upon the last

paragraph of the journal entry which reads as follows:

"It is further ordered by the court that in the event the tenant or tenants upon the lands and tenements involved in this cause shall in writing attorn to the plaintiff, Oklahoma Farm Mortgage Co., a corporation, and shall thereby undertake to agree to pay over to said plaintiff to be applied on the judgment herein the rental of said premises for the year 1923, no order of sale shall issue upon this judgment and decree until December 1, 1923."

It does not appear, from the record that the defendant, E. E. Hatcher, made any objection or took any exception to this part of the judgment. The fact is, it is made for the benefit of the defendants, and whether the tenants in possession of the property were parties to the judgment or not, the defendants could not complain of the execution being issued before December 1, 1923, without showing that these tenants complied with this part of the judgment or by showing that they failed to pay the rents to the plaintiff by some fault of the plaintiff, all of which they failed to do. We cannot see any merit in this contention.

Another ground, under the first objection, urged by defendants is the act of the court on October 22, 1923, being the date on which the land was first advertised for sale, making an order staying the judgment and postponing the sale from October 22, to December 22, 1923. This order shows upon its face that it was made upon the application of the defendant, R. E. Hatcher, but whether it was made upon his application or not, it was made in his interest and for his benefit. The court had no statutory authority for making this order and we do not think it had any inherent authority, and the order so made was a nullity and only tended to delay the sale and was thereafter corrected by another order of the court vacating and setting it aside. The defendant made no objection and took no exception to either one of these orders nor does he show that he was injured by them. There is no merit in defendant's contention on this point.

This leave but one objection upon which defendant bases his contention that the court's order refusing to confirm the sale was correct, and that is, that the consideration paid was inadequate and unconscionable.

In discussing this point plaintiff contends that:

"Gross inadequacy of price standing alone does not constitute legal grounds for refusing to confirm a sheriff's sale of land under foreclosure of mortgage"

—citing in support thereof the following cases: McClain Land & Investment Co. v. Swafford Bros. Dry Goods Co. et al., 11 Okla. 429, 68 Pac. 502; Payne et al. v. Long-Bell Lumber Co. et al., 9 Okla. 683, 60 Pac. 235; Capitol Bank v. Huntoon (Kan.) 11 Pac. 369; Keene Five Cent Savings Bank v. Marshe et al. (Kan.) 3 Pac. 511; Northrop et al. v. Cooper et al., 23 Kan. 432; Hodgins v. Morrow (Ark.) 2 S. W. 104; Central Pacific Railroad Co. v. Creed (Cal.) 11 Pac. 772; Wheeler & Motter Merc. Co. v. Wright et al., 64 Okla. 97, 166 Pac. 184; Wheeler & Motter Merc. Co. v. Miller, 73 Okla. 117, 175 Pac. 224; Brazell et al. v. Brocking et al., 95 Okla. 38, 217 Pac. 847; Robinson v. Kennedy, 93 Kan. 514, 144 Pac. 1002; Anschutz v. Steinwand, 97 Kan. 589, 154 Pac. 252; Bank v. Murray, 84 Kan. 528, 114 Pac. 849; Norris v. Evans, 102 Kan. 583, 171 Pac. 606; Farmers Life Insurance Co. v. Stegink et al. (Kan) 189 Pac. 965 16 R. C. L. 96 and 16 R. C. L. 98.

2. Defendant, in answering this contention, says that the question presented in plaintiff's proposition is not the question for this court to pass on and decide. He says if the trial court had confirmed the sheriff's sale in this case the argument presented would be applicable. He does not explain why the argument would not be applicable in the one case and be applicable in the other and the reason is not obvious. We cannot see why the rule, that inadequacy of price, standing alone, is not sufficient to set aside an order confirming a sale and the same thing not be sufficient to prevent the court from complying with the statutory requirement to confirm the sale. It would be an abuse of discretion to set aside the order confirming the sale for this reason, and, for the same reason, we cannot see why it would not be an abuse of discretion to refuse to confirm the sale, nor do we think inadequacy of consideration could be unconscionable where there was any valuable consideration paid by the highest bidder at a public sale, where there was a total lack of interest on the part of the defendant or judgment debtor. In the case of Duncan v. Eck, 65 Okla. 250, 166 Pac. 121, one of the cases cited by the defendant, in stating the rule of discretion, makes no difference as to the act of confirmation and the act to set aside after confirmation.

If we are able to understand the defendant's contention it is this: That the act of the court in refusing to confirm a sale un-

der foreclosure is a matter of discretion and this discretion is not abused by the court's refusal to confirm the sale for grossly inadequate consideration alone. Counsel quote the rule in the Duncan-Eck Case, supra, as follows:

"That a motion to confirm or set aside a judicial sale is addressed to the sound legal discretion of the court, and unless it affirmatively appears that the court has abused such discretion, its judgment on said motion will not be disturbed on appeal."

The second paragraph of the syllabus in the case states the facts upon which this rule was based. The property was reasonably worth $3,000 and was sold for $100; defendant was a resident of Texas and immediately, on learning the date of the sale, wired the sheriff for information as to the amount of the judgment, including all cost, and the sheriff sent a telegram stating the full amount of said judgment to be $950.36. The defendant sent the amount to the bank designated by the sheriff and in time to reach the sheriff before the date of sale. The sheriff did not turn the money in on the judgment, but proceeded to make the sale, and, on motion filed 12 days after date of sale by defendant to set aside the order, it was held, the circumstances were sufficient to show no abuse of discretion in setting the order aside. This case does not sustain the defendant's contention, because there were other reasons for the court's order than inadequacy of consideration.

Counsel admit, in their brief for defendant that the holding of the Kansas court supports the plaintiff's proposition that there must be more than inadequacy of consideration to authorize the court to refuse to confirm or set aside an order of confirmation in a foreclosure sale, but they contend that the rule of the Kansas court has been modified by the Duncan-Eck Case, supra, and by Wheeler & Motter Co. v. Wright, 64 Okla. 97, 166 Pac. 185. The facts in the first case as above stated do not show a modification of the rule, the second case seems to be against the defendant; the first paragraph of the syllabus reads as follows:

"A judicial sale will not be set aside for inadequacy of price unless it is so great as to shock the conscience. A sale may be set aside for gross inadequacy of price, if accompanied by circumstances showing unfairness in the conduct of the successful bidder, or any circumstances sufficient to raise a presumption of fraud."

We do not see any modification of the Kansas court rule here, nor in the facts upon which the syllabus is based. We have examined the cases cited by the parties in the briefs, besides other cases, and we do not find any case where the discretionary order of the trial court has been affirmed by the appellate court, in a foreclosure sale, without appraisement, where inadequate price alone was the only ground for complaint. In the instant case the appraisement was waived in the mortgage and the property could not be and was not sold under the judgment until after six months. The defendant knew of the judgment; had notice of the sale to be on December 31, 1923, but took no interest in it, and did not appear to bid on the property, which he had a right to do, and did not offer to pay off the judgment before the date of sale, but after the sale, when he learns of the oil boom that commenced in that neighborhood about the time or a little after the sale, and he sees an advance in the value of the land, and oil leases were being blocked up in that neighborhood, he comes into court without any excuse for his neglect and asks the court to deny confirmation of the sale on the ground of inadequacy of consideration, and if the court should favor his request, under the facts in this case, equity would be setting a premium on laxness instead of rewarding vigilance.

3. In a foreclosure sale, without appraisement, the presumption must be indulged that the price bid and paid, as shown by the return of the officer, making the sale, was the reasonable market value of the property, and this presumption can be overturned only by showing acts of unfairness on the part of those making the sale, or unavoidable casualty on the part of the persons who in good faith intend to be present to bid on the property, or such irregularities in the sale proceeding as would cause a defect in the title conveyed by the sale and depreciation of value. Without one or more of these facts or circumstances exists as a cause of the property selling for less than it is complained it should be sold for, there is no ground for hearing the complaint or for refusing to confirm or set aside the order confirming the sale.

Defendant contends that the decisive question in the case is whether or not the finding of the trial court, that the price paid for the land was inadequate, should be disturbed or reversed on appeal. The argument is that since the court heard the evidence as to the value of the land and passed on the adequacy of the price paid and found the same inadequate, that this finding should not be disturbed without

clearly against the weight of the evidence. This would be true if the hearing embraced facts and circumstances accompanying the sale as above discussed, and the finding was based on one or more of such facts or circumstances as a probable cause of the inadequacy of price, then the rule would be applicable and the court's order or judgment would not be disturbed or reversed on appeal without against the clear weight of the evidence.

If we were to adopt the contention of the defendant, that the finding of the court that the price paid is inadequate to the value of the land without any testimony tending to show some good reason for the price bid and paid being so much less than the market value, we would be without any chart or compass to determine whether or not the court has abused its discretion in refusing to confirm a sale or in setting aside an order of confirmation in a foreclosure sale. Under the facts in this case we must hold that the rule invoked by the defendant is not applicable.

In construing the law of judicial sales the court should bear in mind that other parties than the litigants are invited to take part in the proceedings and the sale must be in good faith towards all concerned. As stated in Wheeler & Motter Merc. Co v. Wright, supra:

"The purpose of the law is that a judicial sale shall be final, and to insure reliance upon such sales and induce biddings, it is essential that no sale be set aside for trifling reasons, or on account of matters which ought to have been attended to by the complaining party, prior to the sale. A judicial sale will not be set aside for mere inadequacy of price, unless so great as to shock the conscience. One bidding, in good faith, at a public sale has a right to have the property for which he bids struck off to him, if he is the highest and best bidder. If he be free from wrong, he should not be deprived of the benefit of his bid simply because others do not bid, or because the parties interested have done nothing to secure the attendance of those who would be likely to give for the property something near its value. If the creditors make no effort and are willing to take the chances of a general attendance, they have no right to complain that the property did not bring the amount it should have brought. McClain Land Inv. Co. v. Swafford Bros. Dry Goods Co., 11 Okla. 429, 68 Pac. 502; Mining Co. v. Mason, 145 U. S. 349, 12 Sup. Ct. 887, 36 L. Ed. 732; Pollock v. Haigler, 195 Ala. 522, 70 South. 258."

4. Plaintiff's next proposition is that the price bid and paid at the sale was not grossly inadequate to the value.

Taking the view we do, as above discussed, we do not think the question as to the sufficiency of the price paid for the land at the sale was properly presented to the trial court. The court heard the evidence on this issue over the objection of the plaintiff and we have given the substance of this evidence in the statement of the case, but we do not think the facts stated in the motion of the defendant, to deny the confirmation, sufficient to justify the taking of the evidence and consideration of the question. The pleadings and evidence taken together disclose that the mortgage foreclosed was only for $130 and the taxes paid in the sum of $114.33, and a coupon interest note, on a prior mortgage, for $120, and abstract fee of $9, and attorney's fee for $50, all of which was subject to a prior mortgage in the sum of $2,000. When plaintiff bid and paid for the land the sum of $150 he took it subject to the mortgage of $2,000, and this price he must pay to clear the property. The witnesses testified that the land was worth from $40 to $85 an acre, considering its oil and gas value, and the whole value of the land was from $8,000 to $10,000 and the court found that there was an equity left, above the incumbrances, in the sum of about $7,600, and held that the bid and price paid at the sale was grossly inadequate to the value, but the record discloses that none of the witnesses that testified gave any reason for the market value of the land being so low on the date of the sale. Some of them were in the real estate business and some of them were in the oil and gas leasing business and yet none of them were present to bid on the land or if they were present and bid they did not offer more than the plaintiff's bid. We are disposed to believe the witness Gale Statler, a real estate man, told the true facts of the case when he said the oil and gas values, attached to the land, did not arise until about January 1, 1924, which was just after the sale. We do not think much of the weight and value of the evidence given to overturn the presumption of the market value as shown by the price bid and paid on the day of sale, because the true test of what the market value of property is should be what it brings at a public sale properly advertised and conducted fairly toward all concerned.

There are some other questions discussed by the parties, but we do not deem it necessary for the purposes of the appeal to pursue the subject further.

We think the trial court abused its dis-

cretion in refusing to confirm the sale, on motion of the plaintiff, and we, therefore, recommend that the judgment be reversed, with direction to the trial court to set aside the order overruling the motion and refusing to confirm the sale and to make an order sustaining the motion of plaintiff to confirm the sale of the land.

By the Court: It is so ordered.