## David Demaray Jr. v. William N. Little.

*Foreclosure sale : Surprise : Opening biddings : Re-sale : Confirmation.* Where a defendant had obtained from the complainant an agreement to postpone the sale under a forclosure decree, on which agreement he had relied, but the complainant neglected to give instructions in season to prevent the sale, and the property was sold at considerably less than its value, an order for a re-sale, under proper conditions to protect the purchaser, is a proper method of relief.

Where a re-sale under a forclosure decree was ordered on condition that the bid should be advanced from $11,750 to $16,000 ; that the purchaser at the former sale should be allowed interest on his bid at the rate of ten per cent. per annum, and a counsel fee of $75 ; and on the re-sale a bid of $16,000 was offered, but the sum actually paid was only sufficient to pay the amount to which the former purchaser was entitled, the payment of the remainder of

DEMARAY v. LITTLE.

the bid being delayed, by consent of the defendant in the decree, until the confirmation of the sale:

*Held*, That these circumstances were not sufficient to impeach the good faith of the bidder at the re-sale, and the order of the Court below, confirming the sale, was affirmed.

*Heard October 13. Decided October 19.*

Appeal in Chancery from Saginaw Circuit.

Upon a foreclosure sale in this case the mortgaged premises were bid off by Henry C. Potter for $11,750. The Court refused to confirm the sale and made an order that the premises be again offered for sale, for the minimum sum of $16,000; and if no bidders should offer that sum, that the sale to Potter should stand confirmed. Potter appealed from the order. This Court, at the October term, 1868, dismissed the appeal, as having been prematurely taken. (*17 Mich.*, *386*.) The premises were re-sold under the order of the Court, and Augustine S. Gaylord became the purchaser for the sum of $16,000. Potter opposed the confirmation of this sale; but the Court confirmed it: from which order of confirmation, he appeals to this Court.

*G. V. N. Lothrop*, for Potter, appellant.

*Gaylord & Hanchett*, and *A. Pond*, for appellees.

COOLEY CH. J.

This case comes before us on the appeal of Henry C. Potter from a final order of the Circuit Court for the County of Saginaw, confirming a sale made of the premises described in the decree to Augustine S. Gaylord. The first error which he complains of in the Court was the opening a previous sale made of the same premises to himself, which he alleges was without legal reason and therefore unwarranted.

It appears from the record that in March 1868, the defendant, Little, was the owner of two eighty-acre lots

near East Saginaw, upon one of which complainant held three mortgages amounting to upward of seven thousand dollars, and upon the other two, mortgages upon which over nine thousand dollars was owing. The last mentioned two mortgages were in process of foreclosure, decrees had been made for a sale of the premises to satisfy them, and Messrs. Webber & Smith, complainants solicitors had received instructions, of which they informed defendant, which would forbid their indulging him with delay in making payment. On the 25th of March, 1868, a sale under the decrees was advertised to take place at the Court House in Saginaw City, on the ninth day of the following May, at two o'clock P. M.

Under these circumstances defendant deemed it necessary to sell at least one of his lots of land, and he succeeded in selling the first mentioned parcel for sufficient to satisfy the incumbrances, and paid over the money for that purpose. He did not, however, obtain moneys to satisfy the decrees, and on the sixth day of May, three days before the sale was to take place, he went to the residence of complainant, which was in the State of New Jersey, near the City of New York, for the purpose of obtaining a postponement of the sale. He appears to have found complainant willing to consent to the postponement, provided his rights were not prejudiced thereby, and to ascertain whether they would be or not, complainant went to the City of New York on the morning of the ninth day of May, to consult his lawyer, but failing to find him, and after waiting as long as was deemed safe, he finally, at one o'clock forty-five minutes New York time, forwarded a telegram to his solicitors instructing them to postpone the sale to the nineteenth instant, if not illegal. This telegram was not received until a sale had actually been made, and Potter had become the purchaser at the sum of $11,750.

Upon a showing of these facts, and upon affidavits that the premises were worth considerably more than the amount

of Potter's bid, and that if they should be re-sold, parties stood ready to pay $16,000 for them, the Court of Chancery made an order that the premises be again offered for sale on the 18th day of the following July, after due notice, at the minimum price of $16,000, and if no bids should be offered at that sum, then the previous sale to Potter should stand confirmed. If a re-sale was effected, the amount paid by Potter was to be refunded to him, with interest thereon at the rate of ten per cent per annum, and a counsel fee of seventy-five dollars was also allowed him.

Potter, as we have said, insists that this order was unauthorized. His position is, that mere inadequacy of price, is no sufficient reason, as has been declared by many authorities, for setting aside a sale in Chancery, which was in every respect, open and fair, and where neither accident or mistake has intervened to prevent the largest sum being obtained that was reasonably practicable. Little's delay to take steps to procure a postponement of the sale until it was about to take place, is commented upon, and it is insisted that what took place between himself and the complainant does not entitle him to any relief, inasmuch as he had waited until he could feel no reasonable confidence in being able to complete the arrangement, before he entered upon making it at all, and then delayed any attempt to communicate with the persons in charge of the sale until so late an hour that in the ordinary course of business a telegram would not be likely to reach them before the sale would be made. Moreover, he had made no arrangement at Saginaw to provide for the contingency of failure; and if his property was sacrificed, it was owing to his own foolish and inexcusable supineness, and a Court of equity could not consistently interfere to relieve him by depriving a purchaser of a bargain he had obtained in good faith at an open and public sale.

If the question before us was, whether Little had exhibited promptness and diligence in all his movements, we should reply unhesitatingly in the negative.. Where so much was involved, a cautious man would have been likely to apply for a postponement, if he needed one, sufficiently early to be able to make some allowance for unexpected occurrences. But we cannot say that the delay in this case was so gross as to deprive the party of all claim to relief. He was taking steps to pay off his indebtedness to complainant, and had actually succeeded in paying nearly one-half of it. Under these circumstances he had reason to rely upon being indulged somewhat. The facts show that his expectations in that regard were not without foundation. He visited the complainant early enough for all practical purposes, if he had not been met by a doubt in complainant's mind concerning the safety of a postponement, which he could not reasonably foresee or anticipate. Feeling certain, however, that this doubt would be removed as soon as complainant could consult his lawyer, it is not surprising that he waited for that consultation. The accidental circumstance of the lawyer being away from his place of business prevented the consultation, and waiting too long for it, precluded communication with Saginaw in time to prevent the sale.

From the statement of facts it is plain that the sale which took place was a surprise to both the complainant and the defendant. They were together and fully intended that the sale should be postponed provided complainant's doubt was solved to his satisfaction. They did not intend to delay a telegram until it was so late that in the ordinary course of business it would fail to reach Saginaw in season. They finally sent one an hour before the sale was to take place, but contrary to their expectations it was received an hour too late. They both, it seems, misapprehended the time necessary to ensure the transmission of the dispatch.

DEMARAY v. LITTLE.

To state this case in a few words; the defendant had obtained from the complainant an agreement to a postponement upon which he relied, but the complainant neglected to send forward the instructions until so late an hour that, contrary to his expectations, they failed to be received in season. The sale was therefore made contrary to his wishes, and contrary to instructions then in the course of transmission. It was also made at considerably less than the value of the property. Under these circumstances, we think a case of surprise was made in the Court below, which warranted its interposition, and we are not dissatisfied with the order granting relief.

But it is further insisted that the subsequent sale was not in compliance with the order of the Court, and was therefore erroneously confirmed. The specific objection is that a *bona fide* bid of $16,000 was not obtained. It appears that the bid was for that sum, but there was produced at the time of the sale only the amount of money payable to Potter, that this was tendered and refused, and that the Commissioner holds the certified check of a private banker at East Saginaw for the amount, while the balance of the $16,000, being $4,000 or thereabouts, was receipted by Little to the Commissioner, with an understanding that the money need not actually be paid over by the purchaser until the appeal of Potter was determined.

We have looked into the evidence concerning this sale with a view to satisfy ourselves whether the object of the order for a re-sale had been accomplished by it or not. Unless a bid of $16,000 was made in good faith, we think Potter is entitled to his purchase. Little is not to be permitted to step in and substitute some other person as purchaser in Potter's stead, on a fictitious bid which realizes less money than the order specified. But we discover nothing in the testimony which impeaches the good faith of Mr. Gaylord's bid, or that convinces us that any secret un-

19 MICH.—F².

derstanding exists which is to release him from the payment of any portion of it. And we do not think the fact that the purchaser did not produce at the time of the sale the full purchase price, when the person entitled to the balance did not desire him to do so, is such a failure to comply with the order of re-sale as should have compelled the Court of Chancery to refuse a confirmation.

The order appealed from should be affirmed with costs.

CHRISTIANCY and GRAVES JJ., concurred.

CAMPBELL J.

I do not think the order opening a sale in such a case can be reviewed in this Court. But if it is open to review, I think the circumstances rendered the action of the Circuit Court proper,*and I concur in the reasonings and conclusions of the Chief Justice on all points.