## C. G. MEANS *et al.* v. JOSEPH ROSEVEAR *et al.*

1. SHERIFF'S SALE — *Setting Aside — Inadequacy of Price.* Inadequacy of price, taken alone, is seldom if ever sufficient to authorize the setting aside of a sheriff's sale, yet great inadequacy of price is a circumstance which courts will always regard with suspicion, and in such case slight additional circumstances only are required to authorize the setting aside of the sale.

2. SALE, *Set Aside — Order, Not Vacated.* Where a prior mortgagee, who is a non-resident, obtains a decree of foreclosure, and employs an agent to attend at the time fixed for the sale, with instructions to bid the amount of his judgment, $2,326 and interest and costs, for the property, and at the day of sale such agent goes to the county seat, where the sale is to be had, intending to be present at the sale and to carry out the instructions of the mortgagee, and fails to be present until five or ten minutes after the sale has taken place, on account of the statement of the attorney of the purchaser as to the time of sale, and being also taken by surprise in not reaching the place of sale on time, and the mortgagee is not otherwise represented at the sale, and the property is bid off by a subsequent mortgagee for $1,000, and both the prior mortgagee and mortgagor promptly move the court to set aside the sale, and the former tenders a bid of $3,500 for the property, and it appears that the property is fairly worth from $3,500 to $4,200, *held*, that the order of the district court setting aside and ordering a new sale upon condition that the prior mortgagee's offer of $3,500 be held good as the first bid at such new sale, will not be vacated or reversed.

*Error from Pottawatomie District Court.*

On the 5th day of February, 1886, in an action pending in the district court of Pottawatomie county, wherein *Joseph Rosevear* and Thomas W. Roach were plaintiffs, and T. J. Peter, Mary Jane Peter his wife, and *C. G. Means,* W. W. Means, and C. H. Means, co-partners doing business under the firm-name of C. G. Means & Sons, were defendants, Rosevear and Roach recovered a judgment upon a note against T. J. Peter and Mary Jane Peter for $2,326, bearing 10 per cent. interest, for costs, and for foreclosure of a mortgage given by Peter and wife to secure the note; the mortgage being upon the W. half of S. E. quarter and the E. half of S. W. quarter of sec. 14, tp. 6, range 12, situate in Pottawatomie county, and the same was the first and preferred lien on said premises. On the same day and in the same action C. G. Means & Sons recovered judgment upon a note against T. J. Peter and Mary Jane his wife for $2,392.84, and for foreclosure of a mortgage given by Peter and wife on the same premises, which mortgage by its terms was subject to the prior lien of the mortgage to Rosevear & Roach. The judgment directed a sale of the premises and application of the proceeds as follows:

"1. Payment of all taxes.

"2. Payment of all costs.

"3. Payment to Rosevear & Roach of their judgment for $2,326 and interest.

"4. Payment to C. G. Means & Sons of their judgment for $2,392.84 and interest.

"5. The residue, if any, to be paid to T. J. Peter and Mary Jane his wife."

On the 16th day of August, 1886, a special execution or order of sale was issued to the sheriff of Pottawatomie county, directing that from the proceeds of sale the sheriff pay first the costs and expenses, instead of all taxes due upon said premises as decreed by the judgment. The first publication of notice of sale was August 12, 1886, the last publication September 9, 1886, the sale being advertised to take

place September 11, 1886, at 1 o'clock P. M.   Prior to the commencement of the foreclosure action, both Rosevear & Roach and C. G. Means & Sons sent their mortgages to Hayden & Hayden, attorneys, residing at Holton, for foreclosure. Hayden & Hayden not wishing to represent both parties, placed the mortgage to C. G. Means & Sons in the hands of H. C. Hutton, Esq., an attorney, who at that time was in their office and who afterward removed to Westmoreland, and there was an amicable understanding between Hutton, as attorney for C. G. Means & Sons, and Hayden & Hayden, as attorneys for Rosevear & Roach, as to priority of liens and the judgment that should be rendered.   At the time of sale, neither Joseph Rosevear nor Thomas W. Roach was within the state of Kansas, both being in Idaho or Utah.   A. A. Hayden was instructed by Hayden & Hayden to call upon Hutton and consult him with reference to the sale.   C. G. Means, in company with M. S. Beal, (who went at Means's request,) appeared at place of sale before 1 o'clock.   About fifteen minutes afterward, Beal, at the request of Means, went for the sheriff.   The sheriff testified that only one bid was made; that C. G. Means spoke of that matter to the sheriff once or twice before the sale, which occurred about twenty minutes after 1 o'clock, and said he was in a hurry to go away; that his team was waiting, etc.; and upon the sheriff asking him if any other person was wanting to bid, said "he did not know of any."   Only the sheriff, C. G. Means, Beal, and some person named Anderson were present when the sale was made.   The time occupied in making the sale did not exceed five minutes.   The land was sold to C. G. Means & Sons for $1,000.   The value of the land at the time of the sale was from $3,500 to $4,200.   The judgment debtors, T. J. Peter and Mary Jane his wife, are not responsible, and have no property subject to execution except the land in controversy.   C. G. Means & Sons filed a motion to confirm, and Rosevear & Roach and the defendants, Peter and wife, filed motions to set aside the sale.   On the hearing of the motions,

Rosevear & Roach offered to stipulate to bid $3,500 for the land at a re-sale, provided one was ordered.

At the September term, 1886, the court sustained the motions to set aside the sale at the costs of Rosevear & Roach, amounting to $31, upon condition that Rosevear & Roach stipulated to pay $3,500 for the land, which stipulation was accordingly made by Rosevear & Roach, and costs were paid by them as ordered. To the refusal of the court to confirm the sheriff sale of the real estate, Means & Sons excepted, and bring the case here.

*H. C. Hutton, Smith & Solomon,* and *A. H. Case,* for plaintiffs in error.

*T. A. Fairchild,* for defendants in error T. J. Peter and wife; *Hayden & Hayden,* for defendants in error Rosevear & Roach.

The opinion of the court was delivered by

HORTON, C. J.: It appears from the record that the land in controversy consists of two tracts of eighty acres each, situated in different quarter-sections, but separated by a lane only. Its value at the time of the sheriff's sale was from $3,500 to $4,200. The land was sold in gross by the sheriff to C. G. Means & Sons for $1,000 — Means & Sons being the mortgagees in a junior mortgage. Both the mortgagors T. J. Peter and wife, and the mortgagees in the prior mortgage, Rosevear & Roach, came into court and asked to have the sale set aside, and the mortgagees tendered a bid of $3,500 for the land, being a reasonable value therefor. Rosevear & Roach made reasonable efforts to be represented at the sale, in which as mortgagees they were specially interested, and intended and had given instructions to their agent to bid at least the amount of their judgment, $2,326, with interest and costs. Their agent, Nicholas Marks, testified upon the hearing of the motions to confirm the sheriff's sale and to set it

aside, (which were heard by the court at the same time,) as follows:

"That affiant was employed by the plaintiffs in the above-entitled action to attend the sale of real estate made in said action, on the 11th day of September, 1886, and to represent them at such sale and bid in for them the property sold; and, pursuant to said employment, affiant came to Westmoreland, in the county of Pottawatomie, on Friday, the 10th day of September, 1886, with the intention of representing the plaintiffs at said sale and bidding said property in for them, or at least bidding the full amount of plaintiffs' judgment and costs for said property. Affiant further avers, that on Saturday, September 11, 1886, about 8 o'clock A. M., he called upon H. C. Hutton, Esq., the attorney for C. G. Means, W. W. Means and C. H. Means, defendants, at his office in Westmoreland aforesaid, and informed him, the said H. C. Hutton, at that time, that affiant had come to Westmoreland, aforesaid, for the purpose of representing said plaintiffs at said sale and bidding, in their interest, for the property to be sold.

"Affiant further avers that in the forenoon of said 11th day of September, 1886, he also met A. A. Hayden, a young man who is a student in the office of Hayden & Hayden, of Holton, Kansas, attorneys for said plaintiffs, and after conversing with A. A. Hayden, it was deemed advisable by said Hayden and this affiant for him, the said A. A. Hayden, to send a message by telephone to Fostoria, and then by telegraph to Hayden & Hayden, at Holton, Kansas, for instructions and advice relative to the said sale; that said message was accordingly sent to Hayden & Hayden aforesaid at about 9 o'clock A. M. on said 11th day of September, 1886, and was so sent in presence of H. C. Hutton and with his full knowledge; that when said message was sent to Hayden & Hayden as aforesaid, a request was left by said A. A. Hayden and this affiant with the person in charge of the telephone office at Westmoreland aforesaid, for the answer thereto to be sent as soon as it should be received to the office of said H. C. Hutton, in Westmoreland aforesaid, where the said A. A. Hayden and this affiant would await its delivery. Affiant further avers that at about half-past 12 o'clock P. M. affiant, in company with A. A. Hayden, went to the law office of said H. C. Hutton, in Westmoreland aforesaid, and there remained waiting for said expected message from Hayden & Hayden aforesaid, until about ten or fifteen minutes past one o'clock P. M., in presence of H. C.

Hutton; that while in the office of said H. C. Hutton as aforesaid, waiting for said message from Hayden & Hayden, affiant asked said H. C. Hutton what time said sale would take place, and said H. C. Hutton then informed affiant that said sale would not, in his opinion, take place until about two o'clock P. M.; that affiant did not on said 11th day of September, have a watch, but fully intended and expected to be present at the time and place at which said sale was advertised to take place, but relying upon the representation of said H. C. Hutton, to the effect that the sale would not, in his opinion, take place until about two o'clock P. M., and being unaware that the hour of one o'clock P. M. had arrived, while waiting for his message from Hayden & Hayden, as aforesaid, in said office of H. C. Hutton, this affiant by accident and misfortune failed to attend said sale at the time when the same was made, and did not arrive at the place of said sale until about five minutes after said sale had closed, as affiant is informed and verily believes; that while waiting for the said message from Hayden & Hayden, in the office of H. C. Hutton, at about one o'clock P. M. on said 11th day of September, 1886, either said H. C. Hutton or A. A. Hayden looked at his watch and remarked that it had stopped, and affiant thereupon immediately left said office and went directly to the court house to attend said sale, still believing he would be in time to be present at said sale, and protect the interests of said plaintiffs, and intending so to do. Affiant further avers that had he not been prevented by accident and misfortune, as aforesaid, from attending said sale, he would have bid at least the amount of plaintiffs' judgment, interest, and costs, for said land so sold."

The sale was advertised to take place September 11, 1886, at one o'clock P. M., and the sale was made about twenty minutes after one. T. J. Peter and Mary Jane Peter, his wife, are insolvent, and Rosevear & Roach cannot recover any part of their judgment except from the mortgaged land. The mortgagors, T. J. Peter and wife, and the mortgagees of the prior mortgage, Rosevear & Roach, on September 28, 1886, filed their motion to set aside the sale; therefore, they were prompt in making their application to the court.

It was said in *Dewey v. Linscott*, 20 Kas. 689:

"That where a party makes reasonable efforts to be represented at a sale, in which as mortgagee he is especially inter-

ested, and intends and has given instructions to bid something
like its value for the property, and the agent employed is by
judicial process called away at the time of the sale, and the
property is sold at a grossly inadequate price, and immediately
thereafter, and before confirmation, both mortgagee and mort-
gagor come into court and ask to have the sale set aside, and
the former tenders a bid of apparently the real value, it seems
to us that the court should, having due regard to the interests
of all concerned, parties and purchaser, set aside the sale, and
order a new sale with the mortgagee's offer as the first bid
thereon.    This last should be made a condition of setting aside
the sale, in order that the right of the mortgagor may be pro-
tected.    For while, where appraisement is waived, property
may be sold for whatever it will bring, yet a court of equity
will always, where it has any discretion, so exercise it as to
secure what is just and fair; and it is just and fair that the
mortgagee seeking a new sale should agree to bid for the prop-
erty, and bid its reasonable value.    Then if he obtains the
property he has only given what it is worth; and any way,
the mortgagor, who loses his property, has his indebtedness
*pro tanto* canceled and paid.    The purchaser gets his money
back, and all that he has lost is the chance of a big specula-
tion.    A reference to the authorities sustains these conclu-
sions."

Inadequacy of price, taken alone, is seldom if ever suffi-
cient to authorize the setting aside of a sheriff's sale; yet great
inadequacy of price is a circumstance which courts will always
regard with suspicion, and in such case, slight additional cir-
cumstances only are required to authorize the setting aside of
the sale. (*Dewey v. Linscott,* supra; *Bank v. Huntoon,* 35
Kas. 577.)

In this case the agent employed by Rosevear & Roach to
bid in the mortgaged premises was not called away at the time
of the sale by judicial process, as was the agent in *Dewey v.
Linscott,* but he was, according to his testimony, misled by the
answer of H. C. Hutton, the attorney for Means & Sons, who
were the purchasers at the sale.    It may be said that he ought
not to have relied upon the statement of Hutton, as he knew
the sale was advertised to take place at one o'clock P. M., but
all the facts connected with the sale show that Marks was

guilty, if at all, of only slight negligence; and in such a case as is presented, slight additional circumstances, in connection with the inadequacy of price, will authorize the setting aside of the sale.

The district court heard all the evidence, and as some was oral, its conclusions upon the facts must be sustained, if possible. Upon the testimony, the court evidently held that a case of surprise to the agent employed to bid by Rosevear & Roach, was clearly shown. The court also evidently held that the agent was misled by the statement of the attorney of the purchaser at the sheriff's sale. These, coupled with the inadequacy of price, justified the setting aside of the sale.

We perceive no good reason for reversing the order and judgment of the district court.

Of course, Rosevear & Roach must comply with their stipulation to continue their offer of $3,500 at the new sale.

All the Justices concurring.