## EDWIN FOWLER v. THOMAS S. KRUTZ et al.

1. SHERIFF'S SALE — *Inadequate Price — Sale Set Aside.* "Inadequacy of price, taken alone, is seldom, if ever, sufficient to authorize the setting aside of a sheriff's sale; yet great inadequacy of price is a circumstance which courts will always regard with suspicion, and in such case slight additional circumstances only are required to authorize the setting aside of the sale." (*Means v. Rosevear,* 42 Kas. 377.) And in the present case it is *held,* that the circumstances under which the sale was made and the irregularities therein, in connection with the gross inadequacy of price, are sufficient to sustain the ruling of the court in setting aside the sale.

2. —— — *Discretion of Court.* The trial court is invested with considerable discretion in confirming or vacating a sale, and, unless that discretion has been unwisely exercised and abused, an appellate court will not disturb the ruling made.

### *Error from Cloud District Court.*

ACTION to foreclose a mortgage. Of an order setting aside the foreclosure sale, Edwin Fowler, the purchaser, complains, and brings the case here. The facts appear in the opinion.

*C. N. Sterry*, for plaintiff in error.

*Pulsifer & Alexander,* for defendant in error Pulsifer.

The opinion of the court was delivered by

JOHNSTON, J.: Edwin Fowler brings this proceeding to review a ruling of the district court in setting aside a sale of real estate. David Snavely and wife executed a mortgage upon a farm of 160 acres. He died before the mortgage was satisfied or discharged, and afterward Park B. Pulsifer purchased, from several of the Snavely heirs, an undivided sixteen-eighteenths of the farm, and at the same time assumed a proportion of the mortgage debt. The mortgage was subsequently foreclosed by the owners of the same, when the amount of the mortgage debt was found to be $516.72, and a personal judgment was rendered against Mrs. Snavely, one of the mortgagors, for that sum, and upon the assumption by Pulsifer a personal judgment was rendered against him for $401.78 of the same debt; and there was also a judgment of $28.75 against Marcotte, who had acquired an interest from one of the Snavely heirs. Afterward the judgment was modified by reducing the recovery against Snavely to $463.50, that against Pulsifer being reduced to $360.50, and that against Marcotte to $25.75. The court in effect reduced the amount of the total recovery $53.22. Subsequently, in pursuance of the decree, an order of sale was issued, under which notice was given by the sheriff

that the sale of the real estate would be made on September 23, 1890, at the courthouse in Concordia, at 1 o'clock P. M. of that day.   Between the hours of 1 and 2 o'clock of that day the sheriff sold the real estate, there being no one present but two representatives of the plaintiffs in the foreclosure proceeding, and only one bid being made, which was $450.   The bid was made under the direction of the plaintiffs below, and the sale was made to the person designated by them, namely, Edwin Fowler.   The court being in session, application was immediately made for confirmation of the sale, and such sale was confirmed, in the absence of Pulsifer, and without notice to him.   Immediately afterward, and before 2 o'clock, Pulsifer hurriedly came to the courthouse, and, finding that a sale had been made, went into the court room and, not knowing that any motion had been made to confirm the sale, announced in open court, and in the presence of counsel for plaintiffs below, that he would bid $1,000 for the property, and requested that the order of sale should be returned so as to show him to be the purchaser.   Counsel for plaintiffs below did not inform him of the confirmation of the sale, but stated that he would write to his clients and would advise Pulsifer what their wishes were in the premises. The plaintiffs below insisted upon retaining the property so sold, and a deed was subsequently made by the sheriff in the name of the person designated by them.   A motion was made by Pulsifer to set aside the sale and subsequent proceedings, which was sustained by the court.

We think the circumstances of this case justified the ruling that was made.   By that ruling a hardship and a wrong to Pulsifer was prevented, and the offer which he made is an assurance to the plaintiffs below that they will get their debt and costs, and that was the primary purpose of the judicial proceedings which they were conducting.   They knew of Pulsifer's interest in the property, and there is testimony that they knew of his desire and purpose to be present at the sale. It is true that he was somewhat behind time, but it is very apparent that the sale and confirmation were pushed through

with considerable haste. The first bid made, although small, was accepted, and the sale was confirmed at once, without entering the motion for that purpose on the motion docket, and without waiting a few minutes for Pulsifer, to whom no notice of the motion was given. On the application for confirmation, the court inquired if objection thereto was made by anyone, and the reply of counsel was that he knew of no objection. When Pulsifer arrived at the courthouse and made his offer, he was led to believe by the statements made to him that no motion for confirmation had been made, and that no further steps would be taken until it was determined whether the bid which he made would be accepted. The property was struck off upon a single bid, at a grossly inadequate price. The bid was not more than one-third of the value of the property, not one-half what Pulsifer offered for it, and was not nearly equal to the amount of the judgment and costs in satisfaction of which the sale was made. To have allowed the sale to stand would not only cut Pulsifer out of his entire equity in the land, but would have left an unsatisfied judgment for a considerable amount against him and the other defendants below.

Another irregularity to which attention is called is the fact that the costs were not taxed and inserted in the judgment, nor were they inserted in the order under which the sale was made. Under those circumstances, how could the sheriff determine the amount which should be deducted from the price paid for the costs of the action. It could not be told from the process which he held, nor from the judgment on which it was based. The gross inadequacy of price is a strong circumstance tending to sustain the action of the court. "Inadequacy of price, taken alone, is seldom, if ever, sufficient to authorize the setting aside of a sheriff's sale; yet great inadequacy of price is a circumstance which courts will always regard with suspicion, and in such case slight additional circumstances only are required to authorize the setting aside of the sale." (*Means v. Rosevear*, 42 Kas. 377.) The court is invested with considerable discretion in confirming or vacat-

ing a sale, and unless that discretion has been unwisely exercised an appellate court will not disturb the ruling made. The circumstances under which this sale was made and confirmed, and the irregularities mentioned, are sufficient, when considered in connection with the fact that the price offered was vastly disproportionate to the value of the property, to warrant the court in vacating the sale. Pulsifer acted promptly in moving to set the sale aside, and it seems to us that a due regard for the rights of all concerned required the ruling that was made. (*Means v. Rosevear*, supra; *Loan Ass'n v. McGillick*, 28 Atl. Rep. [N. J. Ch.] 468.)

Fowler, in whose name the bid was made, is not to be treated as a stranger or as an innocent purchaser for value. No money was paid on the bid, and the only consideration was the credit given upon the judgment of plaintiffs below. As has been seen, the land was purchased for plaintiffs in Fowler's name, and hence the relation of the parties had not changed, nor had the rights of third parties intervened before the order complained of was set aside. The court had authority to set aside both the sale and the confirmation, and the effect of this ruling was to nullify the sheriff's deed which had been issued. (*Loan Ass'n v. McGillick*, supra; *Deputron v. Young*, 134 U. S. 241.) More than that, all the orders relating to the sale were made at the same term of court, and it is well settled that a court has a wide and extended discretion and power, during the term, to vacate or modify proceedings had in its own court. (*Hemme v. School District*, 30 Kas. 377; *The State v. Hughes*, 35 id. 626; *The State, ex rel., v. Sowders*, 42 id. 312.)

The plaintiffs below, who are defendants in error, file a cross-petition in error, and complain of the ruling of the court in modifying and reducing the judgment first awarded to them. The difference between the amount claimed and the amount finally awarded is less than $100, and that being the amount in controversy, this court has no jurisdiction to review the ruling at their instance. The filing of a cross-petition in error is treated as the commencement of an independent

proceeding in this court, at the instance of the party filing the same, to reverse or modify an order or judgment of the trial court. (*Leavenworth Lodge v. Byers*, ante, p. 323.) The jurisdiction of the court and the right to review depend upon that proceeding itself, and no jurisdiction can be obtained by reason of the fact that the court has jurisdiction of another proceeding between the same parties. The judgment of the district court will be affirmed.

All the Justices concurring.