## STATE ex rel. COM'RS of the LAND OFFICE v. HARROWER.

No. 21471.    Jan. 30, 1934.

George E. Merritt, R. H. Couch, Haskell Paul, and Lloyd Story, for plaintiff in error.

R. M. Mountcastle, for defendant in error.

SWINDALL, J.   This is an appeal from an order confirming a sale of real estate made under order of sale issued in a proceeding to foreclose a real estate mortgage lien upon 80 acres of land in Muskogee county wherein plaintiff in error was plaintiff and Clara Hoffman and Clara Hoffman Wiebe, administratrix of the estate of Henry O. Hoffman, deceased, and the board of county commissioners of Muskogee county, Okla., were defendants. The order confirming sheriff's sale was made over the objections filed on the part of the plaintiff. The sheriff's sale was had on October 28, 1929, to W. H. Harrower upon a bid of $50. Harrower did not attend the sale with the intention of becoming a purchaser. He was passing the place where the deputy sheriff was conducting the sale. The deputy sheriff advised him that he was selling a farm and requested him to make a bid and he bid $50, which was the only bid for the land. Before confirmation the plaintiff filed objections to confirmation, and the trial court, after hearing evidence in support of the objections to confirm on November 18. 1929, sustained the objections and refused to confirm the sale. On November 19, 1929,

Harrower filed a motion for new trial and on December 16, 1929, the court granted said motion. On December 27, 1929, the plaintiff filed a motion to set aside the order granting a new trial, and the same came on for final hearing on December 30, 1929. Upon the appearance of the respective parties and on that date, the court refused to set aside the order of December 16th granting Harrower a new trial and on the same date heard the motion to confirm sale and the objections thereto and evidence offered by both parties, and entered its order confirming the sale.

Plaintiff in its objections to confirmation of sale alleges that the sale was not held in conformity with the law and that the sale was such that competitive bidding was not allowed; that the price paid at said sale was grossly inadequate, and the plaintiff's objection to confirmation contained an allegation that plaintiff was and is now ready to bid at sale of property $1,000, a fair price for said property. The evidence offered by the plaintiff in support of the objection to confirmation is confined only to the question of the value of the land. Plaintiff states in its brief the loan secured by the mortgage involved in the foreclosure proceedings was a part of the permanent school fund of said state and therefore a trust fund, and that the fair market value of the property was $2,000. One witness testified that he would pay $1,600 for the land, another witness testified the same was worth $2,500, and the court found that the property was worth $2,000. The improvements were in poor condition of repair, but one witness was of the opinion that lumber in a big barn was reasonably worth $500, and some reference to rental one year amounting to $80. There were delinquent taxes and penalties against the land in the sum of about $645 or $650 at the time of the sale. The record shows that the property was assessed for taxation in 1924 at $84.52, in 1925 at $78.03, in 1926 at $90.34, in 1927 at $95.43, and in 1928 at $96.37.

At pages 61-62 of the case-made is the following statement by the court:

"As has been said, gentlemen, I have confirmed a great many sales and when I first heard the motion for confirmation of this sale, the fact of just a bid of $50 for land that was admitted to be reasonably worth $2,000, I couldn't reconcile it. I couldn't be satisfied about it. It seemed shocking. I have passed on these matters heretofore. I believe this is the only instance where I have gone further than just the examination of the regularity of the proceedings of the sheriff. I think that the authorities hold, especially the Oklahoma authorities, that that is as far as the court is authorized to go. To pass on. That if he finds the proceedings have been properly conducted and they are regular, it is a question in my mind whether the court can go back or not; but I did in this case and have gone back because of the allegation of gross inadequacy of the bid. Now, as I started out to say, $50, standing alone for 80 acres of land worth a couple of thousand dollars, as the testimony was then, in this community was shocking. It would be a gross inadequate consideration, but I probably should have gone on further and have taken more things into consideration. I am glad that case has been cited, for it seems to me that Duncan Case is the one in point with this case. Now, then, looking at this case and applying it to the Duncan Case, can I say now that a bid of $50, and subject to payment of taxes to the amount of seven or eight hundred dollars on property that is not worth exceeding two thousand dollars is inadequate? Now, if I did say it was inadequate, could I say it was grossly inadequate? There is no attack being made on the regularity of the sale proceedings; no charge of any misconduct or fraud, but, on the contrary, it would appear that the sale' proceedings were conducted fairly and regularly according to law.

"I think from the evidence given and the authorities submitted that I would be warranted in confirming the sale. The objections and exceptions are overruled and sale confirmed, as per order to be filed. Exceptions allowed."

The court was not requested to make findings of fact and conclusions of law; however, no objections were made to same and the trial judge approved a case-made containing said statement, and under the circumstances we think we have the right to consider the same to aid us in determining upon what theory the trial court vacated its order setting aside the sale, and upon further consideration of the case in granting a new trial and entering an order overruling the objections of plaintiff and confirming the sale.

From the statement by the court it appears that the court was of the opinion that under the rule announced by this court in the case of Duncan v. Eck et al., 65 Okla. 250, 166 P. 121, the court was without authority to refuse confirmation and set aside the sale. In that case this court held that:

"As a general rule mere inadequacy of consideration is not sufficient ground for setting aside a sheriff's sale, but all of the

authorities hold uniformly that gross inadequacy of consideration, coupled with very slight additional circumstances, is sufficient to set aside such sale, and that where the consideration is so grossly inadequate as to shock the conscience of the court, or is very great, it is alone sufficient. Fowler v. Krutz et al., 54 Kan. 622, 38 P. 808; Means et al. v. Rosevear, 42 Kan. 377, 22 P. 319; Magann et al. v. Segal et al., 92 Fed. 252, 34 C. C. A. 323; Wolfert v. Bank, 5 Kan. App. 222, 47 P. 175. These cases also give apt illustrations of circumstances under which courts will set aside a sheriff's sale.

"It is the duty of the court in confirming or setting aside a sheriff's sale to protect all parties concerned, the owners and the creditors of the owners as well as the purchaser.

" 'Whether the sale should be confirmed is a matter within the sound discretion of the court; but it is a discretion that must be exercised reasonably and not arbitrarily; and if abused is subject to review on appeal. The sale must appear to be in all essential respects fair and proper, or it will not be confirmed, and the simple fact that confirmation would sacrifice the interests of those entitled to the protection of the court is sufficient ground for refusal to confirm. The court will not, however, be astute to find objections, and if there is no evidence of unfairness, deception, or impropriety, the sale is properly confirmed.' "

In that case the court further said:

"Taking into consideration that the property, which the uncontradicted evidence shows is worth $3,000, was sold for $100, that this left a deficiency judgment against the defendant of $854.36, that he was misled by the judgment not being satisfied before the sale with the money sent to the sheriff by him, that he had been reasonably diligent in making arrangements to satisfy said judgment, and had sent before the sale the amount required to satisfy said judgment according to the telegram sent to the defendant in Texas by the sheriff, and that he still tendered into court the amount sufficient to satisfy said judgment and all cost, together with the circumstances above set forth, it would be, under such circumstances, to ask the court to confirm said sale in effect to ask the court to sanction an unconscionable bargain.

"The circumstances amply justified the court in rendering the judgment, setting aside the sheriff's sale and refusing to confirm the same. Therefore the judgment of the court should be affirmed."

In the case of Fowler v. Krutz, 54 Kan. 622, 38 P. 808, cited with approval in the Duncan Case, the Supreme Court of Kansas approved a judgment of the trial court setting aside the foreclosure sale where there was only one bid made for the property, which was $540, and the plaintiff offered to bid $1,000 in the event the confirmation was refused. The syllabus in that case is as follows:

"1. 'Inadequacy of price, taken alone, is seldom, if ever, sufficient to authorize the setting aside of a sheriff's sale; yet great inadequacy of price is a circumstance which courts will always regard with suspicion, and in such case slight additional circumstances only are required to authorize the setting aside of the sale.' Means v. Rosevear, 22 P. 319, 42 Kan. 377. And in the present case it is held that the circumstances under which the sale was made, and the irregularities therein, in connection with the gross inadequacy of price, are sufficient to sustain the ruling of the court in setting aside the sale.

"2. The trial court is invested with considerable discretion in confirming or vacating a sale, and, unless that discretion has been unwisely exercised and abused, an appellate court will not disturb the ruling made."

In the case of Magann v. Segal, 92 Fed. 252, cited with approval in the Duncan Case, the United States Circuit Court of Appeals, in an appeal before Taft and Lurton, Circuit Judges, the opinion of the court being delivered by Lurton, Circuit Judge, the court held that:

"Mere inadequacy of price, unless so great as to shock the conscience, will not justify the setting aside of a sale and the reopening of biddings, but, to warrant such action, there must be additional circumstances, which render it inequitable to permit the sale to stand."

And quoted with approval the language used by Mr. Justice Bradley in Graffan v. Burgess, 117 U. S. 180-191, wherein that learned Justice, in the course of a discussion of the general subject of judicial sales, said as to the rule of opening biddings upon a mere advance:

"In this country, Lord Eldon's views were adopted at an early day by the courts, and the rule has become almost universal that a sale will not be set aside for inadequacy of price, unless the inadequacy be so great as to shock the conscience, or unless there be additional circumstances against its fairness; being very much the rule that always prevailed in England as to setting aside sales after the master's report had been confirmed."

In the case of Means v. Rosevear, supra, the Supreme Court of Kansas, in the second syllabus paragraph, said:

"Where a prior mortgagee, who is a nonresident, obtains a decree of foreclosure, and employs an agent to attend at the time fixed for the sale, with instructions to bid the amount of his judgment, $2,326, and interest and costs, for the property, and at the day of sale such agent goes to the county seat, where the sale is to be had, intending to be present at the sale and to carry out the instructions of the mortgagee, and fails to be present until five or ten minutes after the sale has taken place, on account of the statement of the attorney of the purchaser as to the time of sale, and being also taken by surprise in not reaching the place of sale on time, and the mortgagee is not otherwise represented at the sale, and the property is bid off by a subsequent mortgagee for $1,000, and both the prior mortgagee and mortgagor promptly move the court to set aside the sale, and the former tenders a bid of $3,500 for the property, and it appears that the property is fairly worth from $3,500 to $4,200, held, that the order of the district court setting aside and ordering a new sale, upon condition that the prior mortgagee's offer of $3,500 be held good as the first bid at such new sale, will not be vacated or reversed."

In the case of John Paul Lumber Co. v. Neumeister, 106 Wis. 243, 82 N. W. 144, the court, after stating the general rule that mere inadequacy of price is not a sufficient ground for setting aside a foreclosure sale, but that such inadequacy must be considered in connection with any mistake, inadvertence, misapprehension, fraud, or misconduct which prevented persons from bidding at the sale a much larger price, affirmed an order setting aside a foreclosure sale and ordered a resale upon condition that the mortgagor furnish an undertaking, with sufficient sureties that upon the resale he would furnish a responsible bidder or bidders who would bid the amount of the judgment with interest and costs of sale.

In Dewey v. Linscott, 20 Kan. 684, where property which was sold at a mortgage foreclosure sale to a stranger for $50 was valued by witnesses in the confirmation proceedings at sums ranging from $600 to $1,100, and it appears that an agent of the mortgagee had prior to the sale been instructed to bid as high as $740 for the premises, but due to no fault of his own was unable to be present at the sale, and the mortgagee, on the hearing of the motions to confirm and set aside the sale made respectively by the purchaser and mortgagee, offered to give $725, it was held that having due regard to the interests of all concerned, parties and purchasers, the court would set aside the sale and order a new sale with

the mortgagee's offer as the first bid thereon, both the mortgagee and mortgagor having moved to set aside the original sale.

To the same effect are Demaray v. Little, 19 Mich. 244; Strong v. Smith, 68 N. J. Eq. 650, 58 Atl. 301; Kirby v. Ramsey, 9 S. D. 197, 68 N. W. 328; and many other cases set out in the footnote to Suring State Bank v. Ernestine Giese (Wis.) 85 A. L. R. 1477, Anno. p. 1480, 246 N. W. 556.

In the case of Wyandotte State Bank v. Murray et al. (Kan.) 114 P. 847, the Supreme Court of Kansas, in the third and fourth paragraphs of the syllabus, held:

"(3) Under section 6095, Gen. Stat. 1909, requiring the court to confirm a sale if it finds the proceedings regular and in conformity with law and equity, the trial court has substantially the discretion of a chancellor in a suit in equity, and may, although the proceedings be regular, set aside a sale when to confirm would permit inequitable and unfair practices or conduct to be rewarded at the expense of one who has been fair and honest.

"(4) In general, mere inadequacy of price is insufficient to justify setting aside a foreclosure sale, unless such inadequacy be so great as to shock the conscience."

In the body of that case the court says:

"It is urged that Judge Fischer's order setting aside the sale was erroneous in view of the showing made as to its regularity, and that the court has little or no discretion to set aside a sale regularly made. Prior to 1893 the statute required confirmation when the sale had in all respects been made 'in conformity to the provisions of this article.' Section 4556, Gen. Stat. 1889. But the Legislature of 1893 amended this section, and provided that the sale shall be confirmed if the court 'finds the proceedings regular and in conformity with law and equity.' Section 6095, Gen. Stat. 1909. 'Whether the sale should be confirmed is a matter within the sound equitable discretion of the court; but it is a discretion that must be exercised reasonably, and not arbitrarily, and, if abused, is subject to review on appeal. The sale must appear to be in all essential respects fair and proper, or it will not be confirmed, and the simple fact that confirmation would sacrifice the interests of those entitled to the protection of the court is sufficient ground for a refusal to confirm. The court will not, however, be astute to find objections, and, if there is no evidence of unfairness, deception, or impropriety, the sale is properly confirmed."

The court in that case cites with approval Gibson's Suits in Chancery, sec. 631, where the author thus states the rule in equity cases:

"A party may have a sale set aside whenever the property has not sold for a fair price, and there has been (1) some failure of the master to advertise the land properly; or (2) to sell at the right time, or at the right place; or (3) the master has been guilty of some other misconduct, or irregularity, injurious to the sale; or (4) the purchaser has been guilty of some misconduct tending to diminish the price, or discourage bidding; or (5) others have been guilty of combinations, or other acts injuriously affecting the sale; or (6) the weather was so exceedingly inclement, or the waters so high, or in some other way bidders were prevented or deterred, from attending the sale; or (7) for some reason, not the fault of the party complaining, a fair sale was not had. Mere inadequacy of price, however, without more, will not justify a court in setting aside a sale, unless an advance bid be tendered. The only test a court can have of the value of property sold at a forced sale is the price it will bring on due notice at a public sale fairly conducted. If the property has sold for so good a price that a resale would probably avail nothing, the court may disregard all irregularities in the sale, especially where persons under disability are concerned. The fullness of the price in such cases, however, should be made affirmatively to appear by reference to the master or otherwise."

Section 4556, Gen. Stats. of Kansas, 1889, is the same as section 456, O. S. 1931, relating to confirmation of sales of real estate, and provides in part that:

"If the court, upon the return of any writ of execution, for the satisfaction of which any lands or tenements have been sold, shall, after having carefully examined the proceedings of the officer, be satisfied that the sale has, in all respects, been made in conformity to the provisions of this article, the court shall direct the clerk to make an entry on the journal that the court is satisfied of the legality of such sale, and an order that the officer make to the purchaser a deed for such lands and tenements. * * *"

The "proceedings of the officer" are the steps taken by the officer, such as levying the execution upon the lands and tenements, calling an inquest of three disinterested householders and administering to them an oath impartially to appraise the property so levied on upon actual view, depositing a copy of the appraisement in the office of the court clerk where the writ issued, advertising the lands for sale, and selling the same, and if appraisement be waived in the mortgage to take the other steps mentioned. The exceptions to confirmation in this case do not question the proceedings of the officer; the only issue raised is an equitable

issue, and, under our Constitution and laws, the district court had power and jurisdiction to pass upon and determine that issue. Section 4, O. S. 1931, provides:

"The distinction between actions at law and suits in equity, and the forms of all such actions and suits, heretofore existing, are abolished; and in their place there shall be, hereafter, but one form of action, which shall be called a civil action."

Section 8, same, provides:

"Remedies in the courts of justice are divided into:

"First. Actions.

"Second. Special Proceedings."

Section 9 provides:

"An action is an ordinary proceeding in a court of justice by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense."

Section 10 provides:

"Every other remedy is a special proceeding."

Section 11 provides:

"Actions are of two kinds: first, civil; second, criminal."

Section 12 provides:

"A criminal action is one prosecuted by the state as a party, against a person charged with a public offense, for the punishment thereof."

Section 13 provides:

"Every other is a civil action."

In jurisdictions where courts of law and chancery courts are provided by law, in an action at law to set aside a sale of real estate sold under execution to satisfy a judgment, the complaining party would be required to resort to a court of chancery for relief, but under the practice in this state the district court has jurisdiction of both actions at law and suits in equity.

In 35 C. J., p. 101, sec. 164, the rule is stated as follows:

"Although it is largely within the discretion of the court to grant or deny an application to vacate a judicial sale because the price was inadequate, the court will refuse to set aside a sale on the mere ground of inadequacy of price alone, especially after confirmation, even though the inadequacy is gross, unless the inadequacy is so great as in itself to raise a presumption of fraud, or to shock the conscience of the court."

And under the last clause the author cites

decisions from the Supreme Court of the United States, Alabama, Arkansas, California, Colorado, Georgia, Illinois, Indiana, Kansas, Kentucky, Maryland, Maine, Missouri, New Jersey, New York, Oklahoma, Oregon, Tennessee, Texas, Virginia, Washington, and West Virginia. We have read and considered many of these cases and they sustain the text. We review and discuss in this opinion the Oklahoma and some of the Kansas cases cited in support of the text.

In the case of Wheeler & Motter Merc. Co. v. Miller, 73 Okla. 117, 175 P. 224, this court, in the first syllabus paragraph, held:

"If unaccompanied by circumstances showing unfairness in the conduct of the successful bidder or sufficient to raise a presumption of fraud, a judicial sale will not be set aside for mere inadequacy of price, unless it is so great as to shock the conscience."

In the case of Wheeler & Motter Merc. Co. v. Wright, 64 Okla. 97, 166 P. 184, city property valued at from $36,000 to $40,000 was sold at a foreclosure sale in all things regular. W., holding a first mortgage for $42,000, offered the highest bid of $16,000. After the sale W. filed a claim against the mortgagor in bankruptcy for $28,000. On objection to confirmation of sale an offer to bid $25,000 on resale made by an unsecured creditor, W. increased his bid to $25,000 by reducing his claim filed against mortgagor. Thereupon objections were overruled and sale confirmed to W. Held, no such gross inadequacy of price or circumstances sufficient to raise a presumption of fraud to set aside the sale. The court, after stating the facts, said:

"While a judicial sale will not be set aside for mere inadequacy of price, unless it is so gross as to shock the conscience, it will be vacated if great inadequacy is accompanied by slight circumstances of unfairness in the conduct of the successful bidder, or any circumstances sufficient to raise a presumption of fraud."

In the third paragraph of the syllabus by the court, it is held:

"A court of equity has a discretion as to ordering or refusing a resale of property sold at judicial sale."

It is clearly pointed out by this court in Brazell v. Brockins, 95 Okla. 38, 217 P. 847, and Boviard Supply Co. v. American National Bank, 123 Okla. 245, 253 P. 92, that in considering the proceedings of the officer under section 709, C. O. S. 1921. now section 456, O. S. 1931, in making the sale of real estate under execution and on motion to confirm, the court should confine itself to the regularity of the proceedings on the sale, but said section does not limit the power of the court in refusing to confirm or in setting aside a sale on equitable grounds.

In the Brazell Case the court in the first syllabus paragraph held that:

"On a motion to confirm sale of real estate made under execution, the court should confine itself to the regularity of the proceeding on the sale and is not required to go behind the execution and look into the regularity of the judgment."

And in the third syllabus paragraph that:

"Sections 810, 812, and 814, Comp. St. 1921, provide a method by which judgments may be vacated, and, since a judgment rendered without service or appearance and where the judgment on its face is regular is not void but voidable, a motion or petition should be filed pleading a valid defense in order to set aside the judgment or sale made thereunder."

In the Boviard Supply Co. Case we held in the first and second syllabus paragraphs that:

"1. The hearing on a return of sale of real estate is confined to the matter of confirming or rejecting the sale according to the provisions of section 709, C. O. S. 1921 (now 456, O. S. 1931). The scope of the hearing is confined to the face of the proceedings to determine whether the sale has been made in a regular manner according to law.

"2. However, the court may go into matters of fraud in the hearing, which appear on the face of the proceedings or are charged in proper pleadings."

In that case the court was considering in the second paragraph of the syllabus the question of setting aside a sale on the grounds of fraud. The court has the same power in proper pleadings to refuse to confirm or vacate a judgment upon other equitable grounds.

In the case of Challiss v. Wise, 2 Kan. 193, the Supreme Court of that state held that the order of confirmation is an adjudication merely; that the proceedings of the officer as they appear of record are regular and a direction to the sheriff to complete the sale.

So, we fail to see where the amendment to section 4556, Gen. Stats. of Kansas, 1889, which is the same as section 456, O. S. 1931, conferred upon the district court any other or additional equity powers not theretofore possessed. The only thing that we can see that the amendment did was to

clearly convey to the courts of Kansas the legislative intent that section 4556 was not to limit their equitable powers. We, therefore, hold that section 456, O. S. 1931, applies only to the proceedings of the officer in making a sale of real estate under execution, and on motion to confirm the court should confine itself to the regularity of the proceedings, but said section does not limit the power of the court in refusing to confirm or in setting aside a sale in proper pleadings on equitable grounds. We are not commending the pleadings of the plaintiff to set aside a sale. We think that the facts could and should have been set out in much clearer form, but the sufficiency of the allegations were not properly challenged in the trial court, and not having been challenged there we think they are sufficient to present the issues here.

The purchaser, Harrower, in his brief and response to the petition for rehearing calls our attention to the cases of Oklahoma Farm Mortgage Co. v. Hatcher, 106 Okla. 262, 234 P. 203, and Brauns v. Donahoe, 127 Okla. 33, 259 P. 541. In the Oklahoma Farm Mortgage Co. Case we find no fault with the first paragraph of the syllabus relative to confirmation by the court upon an examination of the proceedings of the officer, but we think there is language used in the case calculated to mislead and confuse rather than enlighten the bench and bar. In that case this court, in an opinion delivered by Commissioner Threadgill, referring to a former opinion of this court and herein heretofore considered, says:

"In the case of Duncan v. Eck, 65 Okla. 250, 166 P. 121, one of the cases cited by the defendant, in stating the rule of discretion, makes no difference as to the act of confirmation and the act to set aside after confirmation."

The trial court in exercising its equitable powers is not required to wait until after confirmation to set aside a sale in proper pleadings. Upon equitable grounds the court may refuse to confirm or it may set aside a confirmation of sale after the same has been confirmed. In the Brauns Case this court, in an opinion by Commissioner Leach, appears to have followed the case of Oklahoma Farm Mortgage Co. v. Hatcher, supra. Any views expressed therein contrary to the views of the court herein expressed are disapproved.

Our attention is called to the case of State ex rel. Commissioners of the Land Office of Oklahoma v. Wilson, 124 Okla. 236, 254 P. 968, wherein this court in the third syllabus paragraph held that:

"Mere inadequacy of consideration is not sufficient, of itself, to set aside a judicial sale, yet, where the inadequacy is gross, a slight showing of fraud or irregularity only is required to authorize setting it aside, but evidence of carelessness, negligence, or oversight of the party complaining is not sufficient, although the consideration may be grossly inadequate."

In that case Duncan v. Eck, supra, is cited, but not considered. In the Duncan Case the trial court refused to confirm the sale, and we held that the trial court did not abuse its discretion in refusing confirmation. In the case of State ex rel. Commissioners of the Land Office of Oklahoma v. Wilson, supra, the trial court confirmed the sale, and we held in the first syllabus paragraph that:

"A motion to confirm or set aside a judicial sale is addressed to the sound legal discretion of the court, and, unless it affirmatively appears that the court has abused such discretion, its judgment on said motion will not be disturbed on appeal."

From a careful examination of the third syllabus paragraph, it appears that the same confuses the rule relative to cases of mere inadequacy of consideration and cases where the purchase price is so grossly inadequate as to shock the conscience. The rule there expressed relative to gross inadequacy of purchase price is not in harmony with the rule announced in the Duncan Case and in several other decisions by this court, and we refuse to follow the rule that a court of equity may not under any circumstances refuse to confirm a sale where the price bid is so grossly inadequate as to shock the conscience of the court. From a careful examination of the authorities, we think the general rule is fairly stated by the annotator in the footnote to the case of Suring State Bank v. Geise, supra, wherein he states:

"It is the general rule that in the absence of fraud and unfairness, mere inadequacy of price will not invalidate a foreclosure sale, unless the price is so grossly inadequate and unconscionable as to shock the moral sense, or unless there be additional circumstances against its fairness. However, if there be great inadequacy, slight circumstances of unfairness in the conduct of the party benefited by the sale will suffice to justify setting it aside. It is difficult to state a more definite rule than this, and each case must stand upon its own peculiar facts. 19 R. C. L. 584."

In the case at bar we are dealing with a state of facts that bring it within that class of cases where the price is so grossly inadequate and unconscionable as to shock the moral sense and a substantial advance bid is tendered by the mortgagee.

Sections 419 and 420 provide for giving notice to the Attorney General or any Assistant Attorney General who shall appear as attorney of record for the state in all cases pending in the county, district, or superior courts before any case shall be dismissed or judgment by default entered against the state; and section 421 provides that all orders and judgments rendered in the absence of proof of notice shall be void and the court shall on its own motion vacate and set aside same when the same is brought to its attention. In the case at bar the Commissioners of the Land Office, a department of our state government, is plaintiff, and it appears that when a motion was filed to confirm the sale in this case, the attorney for the School Land Commissioners promptly filed a motion requesting the court to refuse confirmation and to set aside the sale for the reason the price bid was so grossly inadequate as to shock the conscience, and offered to bid $1,000 for the property at a resale. In offering to bid $1,000 at a resale, the Commissioners evidently had in mind the fact that a witness had testified that he would pay $1,600 for the land, and that it could sell the land for $1,000, and the sum of $600 the other party offered above its bid would pay delinquent taxes and costs. The record is silent as to why the Commissioners of the Land Office did not have a bidder present at the sale. We realize that the Commissioners of the Land Office, in administering the affairs of that department and investing the permanent school fund in valid securities, transact an immense volume of business and loan many millions of dollars of the trust fund set aside by the government of the United States for the use and benefit of the school children of the state of Oklahoma, and that in looking after cases in 77 counties, however diligent its counsel may be, they might overlook a sale date, and evidently the Legislature had that fact in mind when it enacted a law requiring notice to the Attorney General before the court entered an order against the rights of the state.

The people of the state, when they adopted the Constitution of the state of Oklahoma, entered into a solemn contract with the United States to keep the permanent school fund as a sacred trust. Section 1 of article 11 of the Constitution of Oklahoma reads:

"The state hereby accepts all grants of land and donations of money made by the United States under the provisions of the Enabling Act, and any other Acts of Congress, for the uses and purposes and upon the conditions, and under the limitations for which the same are granted or donated; and the faith of the state is hereby pledged to preserve such lands and moneys and all moneys derived from the sale of any of said lands as a sacred trust, and to keep the same for the uses and purposes for which they were granted or donated."

Section 2 of article 11, in referring to said trust fund, provides in part that:

"The principal shall be deemed a trust fund held by the state, and shall forever remain inviolate. It may be increased, but shall never be diminished. The state shall reimburse said permanent school fund for all losses thereof which may in any manner occur, and no portion of said fund shall be diverted for any other use or purpose."

Section 6 of article 11, relating to said fund, reads in part that:

"The Legislature shall provide the manner of selecting the securities aforesaid, prescribe the rules, regulations, restrictions, and conditions upon which the funds aforesaid shall be loaned or invested, and do all things necessary for the safety of the funds and permanency of the investment."

It is seriously contended by the plaintiff in its brief that the defendant at the time he purchased the land involved in this action was a member of the state Legislature and a high state official and an agent of the state, and as such agent his duties were at least twofold: First, to look to the general welfare of the state and see that the permanent school fund was not lost or diminished; and second, that if the Commissioners of the Land Office in the management of said fund sustained a loss of a part of said fund, which would necessarily result if the confirmation of the sale in this case was affirmed, then it would become the sworn duty of the defendant as a member of the Legislature of the state of Oklahoma to vote for an appropriation of public funds of the state to reimburse the permanent school fund for the sum thus lost or diminished. There is no evidence in the record that the purchaser at the time he made a bid knew that the sale was of lands upon which the Commissioners of the Land Office had loaned a part of the permanent school fund, but immediately after the Commissioners of the Land Office by their attorney filed exceptions to the confirmation on

account of the gross inadequacy of the purchase price, it was called to the purchaser's attention that the mortgage under foreclosure was given to secure a loan of the permanent school fund. This issue was not presented to the trial court as one of the grounds to vacate the sale, either in the pleadings or proof, and we do not feel that, under the circumstances of this case, we would be justified in passing upon that issue for the reason it was not raised in the trial court, and for the further reason that it is not necessary to a determination of the case, but we call attention to the seriousness of the issue presented in the briefs of plaintiff in error, and it appears to us that, under the circumstances, even though the purchaser may not have been disqualified to purchase, which question we are leaving open and not deciding for the reasons stated, it does appear to us that when the Commissioners of the Land Office called to the attention of the purchaser, who was a member of the state Legislature, that the permanent school fund of the state was liable to sustain a loss by virtue of his bid, it would have been commendable on his part to have consented to the sale being set aside and a resale ordered. He did not do so.

The trial court set aside an order vacating the sale and entered an order confirming over the objection and showing made by the Commissioners of the Land Office, and, under the circumstances of this case, we think that the trial court committed error in vacating its order refusing to confirm and in making the order confirming the sale, and in refusing to vacate the order made confirming said sale, and in denying motion of the plaintiff for a new trial.

The cause is, therefore, reversed and remanded to the district court of Muskogee county, with directions to that court to vacate the order denying a motion for new trial, and to grant the plaintiff a new trial, and to vacate the order of confirmation and reinstate its order setting aside the sale and to order a resale upon condition that the first bid of the plaintiff for the real estate and premises involved at a resale be the sum of $1,000.

RILEY, C. J., CULLISON, V. C. J., and McNEILL, OSBORN, and BUSBY, JJ., concur. BAYLESS, J., concurs in conclusion.